1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   KEVIN J. DUNNE  Bar No. 40030
2  LAURA L. GOODMAN  Bar No. 142689
   ANDREW J. KING  Bar No. 253962
3  One Market Plaza
   Steuart Tower, 8th Floor
4  San Francisco, California 94105
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   STATE FARM MUTUAL AUTOMOBILE
7  INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11  GREGORY BUONOCORE, an individual on        CASE NO. CV 08 0184 PJH
    behalf of himself and all others similarly
12  situated,                                  **APPENDIX OF UNPUBLISHED
                                               AUTHORITIES CITED IN STATE FARM
13         Plaintiff,                          MUTUAL AUTOMOBILE INSURANCE
                                               COMPANY'S MOTION FOR JUDGMENT
14         v.                                  ON THE PLEADINGS [FED.R.CIV.P.
                                               12(C)]**
15  STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY; and DOES 1              JUDGE:  The Honorable Phyllis Hamilton
16  through 10 inclusive,                      CTRM:   3
                                               DATE:   August 6, 2008
17         Defendants.                         TIME:   9:00 a.m.

18

19

20

21

22

23

24

25

26

27

SEDGWICK
DETERT, MORAN & ARNOLD LLP
28
                                                         CASE NO. CV 08 0184 PJH

1    For the convenience of the Court, State Farm Mutual Automobile Insurance Company

2    ("State Farm") respectfully submits true and correct copies of the following unpublished

3    authorities, cited by State Farm in its Motion for Judgment on the Pleadings.

4    **Exhibit No.**    **Case**

5        1    *Bouton v. USAA Cas. Ins. Co.*, ___ Cal.4th __ , __Cal.Rptr.3d __, No. S149851,

6            2008 WL 2332004 (Cal. June 9, 2008)

7        2    *Hillcrest Christian School v. City of Los Angeles*, No. CV 05-8788-RGK (RCx),

8            2006 WL 5207228 (C.D.Cal. Dec. 20, 2006)

9

10    DATED:  June 27, 2008            SEDGWICK, DETERT, MORAN & ARNOLD LLP

11

12                        By:_____/s/_____
                            Kevin J. Dunne
13                          Laura L. Goodman
                            Andrew J. King
14                          Attorneys for Defendant
                            STATE FARM MUTUAL AUTOMOBILE
                            INSURANCE COMPANY
15

16

17

18

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP    28

CASE NO. CV 08 0184 PJH

APPENDIX OF UNPUBLISHED AUTHORITIES IN SUPPORT OF STATE FARM'S REPLY BRIEF IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND FOR A STAY

# Exhibit 1

# Westlaw.

--- Cal.Rptr.3d ----
Page 1
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

**H**Boutonv. USAA Cas. Ins. Co.
Cal.,2008.
Only the Westlaw citation is currently available.
Supreme Court of California.
Lloyd BOUTON, Plaintiff and Appellant,
v.
USAA CASUALTY INSURANCE COMPANY,
Defendant and Respondent.
Charles Michael O'Hanesian, Plaintiff and Appellant,
v.
State Farm Mutual Automobile Insurance Company,
et al., Defendants and Respondents.
**Nos. S149851, S149847.**

June 9, 2008.

**Background:** Insured sued his insurer for breach of contract and bad faith, based on the manner in which insurer handled insured's underinsured motorist claims. Insurer filed demurrer. The Superior Court, Riverside County, No. INC045408,Christopher J. Sheldon, J., sustained demurrer without leave to amend and dismissed the action. Insured appealed. The Court of Appeal affirmed. The Supreme Court granted review, superseding the opinion of the Court of Appeal. In another action, claimant, as the brother of the insured, petitioned to compel arbitration of his claim against insurer for uninsured or underinsured motorist benefits. The Superior Court, San Diego County, No. GIN048508,Joel M. Pressman and Richard G. Cline, JJ., denied petition to compel arbitration and granted insurer's motion to strike complaint. Claimant appealed. The Court of Appeal reversed. The Supreme Court granted review, superseding the opinion of the Court of Appeal. The cases were consolidated.

**Holdings:** The Supreme Court, Moreno, J., held that:
(1) liability and damages are the only issues arbitrable under statutory arbitration requirement for uninsured motorist insurance coverage, overruling *Van Tassel v. Superior Court,* 12 Cal.3d 624, 116 Cal.Rptr. 505, 526 P.2d 969;
(2) determination of whether claimant was insured under uninsured motorist provision was not subject to statutory arbitration requirement; and
(3) determination of whether default judgment obtained by insured against underinsured motorist

bound insurer was subject to statutory arbitration requirement.

Ordered accordingly.

Opinions, 52 Cal.Rptr.3d 463 and 52 Cal.Rptr.3d 551, superseded.

**[1] Insurance 217 €—0**

217 Insurance
The only issues arbitrable under statutory arbitration requirement for uninsured and underinsured motorist insurance coverage are whether the insured is entitled to recover against the underinsured motorist and, if so, the amount of the damages. West's Ann.Cal.Ins.Code § 11580.2(f).
*See Annot., What Issues Are Arbitrable Under Arbitration Provisions of Uninsured and Underinsured Motorist Insurance (2002) 103 A.L.R.5th 1;Cal. Jur. 3d, Insurance Contracts, § 627; Cal. Civil Practice (Thomson/West 2007) Torts, § 38:9; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007) ¶ 6:2390 (CAINSL Ch. 6G-D).*

**[2] Insurance 217 €—0**

217 Insurance
Determination of whether claimant was insured under underinsured motorist provision of his sister's automobile policy was not subject to statutory arbitration requirement, and thus was not arbitrable absent agreement to arbitrate more than statute required, since it was not a question of the underinsured motorist's liability or damages owed to the insured. West's Ann.Cal.Ins.Code § 11580.2(f).

**[3] Insurance 217 €—0**

217 Insurance
Determination of whether default judgment obtained by insured against underinsured motorist was binding on insurer, with respect to insured's general liability policy, was subject to statutory arbitration requirement for underinsured motorist coverage issues, even though insured and insurer both argued that the issue should be resolved by a court, since

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

Page 2

arbitrator would necessarily address the effect of the default judgment in determining whether insured was entitled to collect damages from the owner or driver of the underinsured motor vehicle, and, if so, in what amount. West's Ann.Cal.Ins.Code § 11580.2(f).

**[4] Alternative Dispute Resolution 25T** ☞0

25T Alternative Dispute Resolution
Parties cannot be compelled to arbitrate a dispute if they have not agreed to do so, and no statute compels them to arbitrate.

**[5] Alternative Dispute Resolution 25T** ☞0

25T Alternative Dispute Resolution
In determining whether parties can be compelled to arbitrate an issue, concerns about uniformity must be balanced against the strong public policy favoring arbitration of disputes when the parties so agree.

**[6] Insurance 217** ☞0

217 Insurance
Insured and insurer were required to arbitrate issue of whether default judgment obtained by insured against underinsured motorist was binding on insurer with respect to insured's umbrella policy, where umbrella policy provided that it would apply in accordance with the terms and conditions of underlying underinsured motorist coverage, which was subject to statutory arbitration requirement. West's Ann.Cal.Ins.Code § 11580.2(f).

Superior Court, San Diego & Riverside County; Joel M. Pressman and Richard G. Cline (San Diego); Christopher J. Sheldon (Riverside), Judges.
Shipley & Kirch, Law Offices of Jacques J. Kirch, Jacques J. Kirch; Law Offices of Daniel S. Rosenberg and Daniel S. Rosenberg, for Plaintiff and Appellant Lloyd Bouton.
Law Office of Duncan M. James, Duncan M. James, David M. Kindopp, Donald J. McMullen and Joseph John Turri, for Plaintiff and Appellant Charles Michael O'Hanesian.
Daniels, Fine, Israel, Schonbuch & Lebovits, Paul R. Fine, Erin O'Neill Hallissy and Leila M. Reed, for Defendant and Respondent USAA Casualty Insurance Company.
Robie & Matthai, James R. Robie and Steven S.

Fleischman for State Farm Mutual Automobile Insurance Company and Infinity Insurance Company as Amici Curiae on behalf of Defendant and Respondent USAA Casualty Insurance Company.
Hager & Dowling, John V. Hager and Holly C. Blackwell for Mercury Casualty Company as Amicus Curiae on behalf of Defendant and Respondent USAA Casualty Insurance Company.
Horvitz & Levy, Peter Abrahams, Mitchell C. Tilner; Crandall, Wade & Lowe, James L. Crandall, Edwin B. Brown and William F. Zulch, for Defendants and Respondents State Farm Mutual Automobile Insurance Company et al.
Daniels, Fine, Israel, Schonbuch & Lebovits, Paul R. Fine and Erin O'Neill Hallissy for United Services Automobile Association as Amicus Curiae on behalf of Defendants and Respondents State Farm Mutual Automobile Insurance Company et al.
MORENO, J.
*1 Insurance Code section 11580.2 requires insurers to provide coverage for bodily injury or wrongful death caused by uninsured motorists. Subdivision (f) of this statute provides that if the insurer and the insured cannot agree whether the insured is legally entitled to recover damages from an uninsured motorist and the amount of such damages, those issues shall be determined by arbitration. (Ins.Code, § 11580.2, subd. (f).)

We granted review in these consolidated cases to decide two related issues. The insurer in *Boutonv. USAA Casualty Insurance Company* opposed a demand for arbitration on the ground that the claimant was not covered by the insurance policy. We held in *Van Tassel v. Superior Court* (1974) 12 Cal.3d 624, 627, 116 Cal.Rptr. 505, 526 P.2d 969(*Van Tassel*) that "jurisdictional facts," such as whether a claimant is insured under an uninsured motorist provision, are subject to arbitration. But we retreated from this holding the next year, saying in *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 485, 121 Cal.Rptr. 477, 535 P.2d 341(*Freeman*), that we "loosely and unfortunately" termed the issue in *Van Tassel* "jurisdictional." We explained in *Freeman* that Insurance Code section 11580.2, subdivision (f), "read literally, requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of the damages."(*Freeman, supra,* 14 Cal.3d at p. 480, 121 Cal.Rptr. 477, 535 P.2d 341.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----                                                                              Page 3
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

We conclude that our holding in *Van Tassel* cannot be reconciled with our subsequent holding in *Freeman* and must be overruled. Determining whether a claimant is insured under an uninsured motorist provision is not a question of the underinsured tortfeasor's liability or damages owed to the insured, and is therefore not subject to arbitration under Insurance Code section 11580.2, subdivision (f).

*O'Hanesian v. State Farm Mutual Insurance Company* raises the related question whether an arbitrator or a court should decide if a default judgment obtained by the insured against the underinsured tortfeasor binds the insurer. We conclude that this issue is subject to arbitration, because Insurance Code section 11580.2, subdivision (f) requires an insured and his or her insurer to arbitrate the tortfeasor's liability and damages owed to the insured, and the binding nature of a default judgment obtained against that tortfeasor falls squarely within those questions of liability and damages statutorily subject to arbitration.

## BACKGROUND

### *Boutonv. USAA Casualty Insurance Company*

Plaintiff Lloyd Bouton was injured in an automobile accident, and settled his claim against Kevin Daniels, the driver of the other vehicle, for Daniels's automobile insurance policy limit of $15,000. Bouton formally demanded arbitration with defendant USAA Casualty Insurance Company, his sister's insurer, seeking damages exceeding the $15,000 policy limit payment he received from Daniels's insurer. USAA denied coverage, claiming that Bouton was not a resident of his sister's household, and was therefore not covered under her insurance policy.

*2 Consistent with Insurance Code section 11580.2, subdivision (b) FN1, the policy's underinsured motorist FN2 provision defines a "covered person" as the named insured "or any family member." The policy defines a "family member" as "a person related to [the named insured] by blood, marriage, or adoption who is a resident of [the named insured's] household."Bouton contends that he constituted a family member of the named insured, his sister, Samela Bouton, because they were blood relatives

permanently residing in the same household. The underinsured motorist provision of the policy provided that USAA would "pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an ... underinsured motor vehicle because of [bodily injury] sustained by a covered person and caused by an auto accident."Consistent with section 11580.2, subdivision (p)(3), the policy provided that no payment would be made until "the limits of liability under any applicable motor vehicle bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements, and proof of such is submitted to [USAA.]"

The underinsured motorist provision of the policy contained an arbitration agreement, which stated: "If [USAA] and a covered person disagree as to: [¶] 1. Whether a covered person is legally entitled to recover [bodily injury] or [property damage] damages from the owner or operator of an ... underinsured motor vehicle; or [¶] 2. The amount of [bodily injury] damages that the covered person is legally entitled to collect from that owner; [¶] then, that disagreement shall be arbitrated.... This arbitration shall be limited to the two aforementioned factual issues and shall not address any other issues, including but not limited to, coverage questions. Any arbitration finding that goes beyond the two aforementioned factual issues shall be voidable by [USAA] or a covered person."

USAA opposed Bouton's demand for arbitration, arguing that Bouton was not covered under his sister's policy. The trial court denied Bouton's motion to compel arbitration, finding that because the arbitration provision of the insurance policy was no broader than section 11580.2, subdivision (f), the parties were only bound to arbitrate the issues of liability and damages, not coverage. Bouton appealed the trial court's denial of his motion to compel arbitration. The Court of Appeal held that the trial court erred in denying Bouton's motion to compel arbitration, and that the parties were required to arbitrate coverage as part of their agreement to arbitrate the liability and damages issues, consistent with this court's decision in *Van Tassel.*USAA sought review in this court.

### *O'Hanesian v. State Farm Mutual Automobile Insurance Company*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----                                                                    Page 4
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

Plaintiff Charles Michael O'Hanesian was insured by defendant State Farm Mutual Automobile Insurance Company under a general insurance policy with a $100,000 limit for bodily injury, and under an umbrella policy with a $1 million limit for bodily injury. The underinsured motorist provision of the policies covered "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle."Following an accident, the policies required that the insured provide "all the details about the death, injury, treatment and other information" necessary to "determine the amount payable," and "be examined by physicians chosen and paid by" the insurer.

*3 The policies contained an arbitration provision as required by section 11580.2, subdivision (f), which stated: "Two questions must be decided by agreement between the insured and us: [¶] 1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and [¶] 2. If so, in what amount? [¶] If there is no agreement, upon written request of the insured or us, these questions shall be decided by arbitration as provided by section 11580.2 of the California Insurance Code.... [¶] We are not bound by any judgment against any person or organization obtained without our written consent."The term "uninsured motor vehicle" was defined by the policy to include underinsured motor vehicles.

Consistent with section 11580.2, subdivision (p)(3), the policies provided that "if the damages are caused by an underinsured motor vehicle, there is no coverage until: [¶] 1. The limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements to other persons; or [¶] 2. Such limits of liability or remaining part of them have been offered to the insured in writing."

O'Hanesian was injured when his car was rear-ended by Curtis Gray Thurlow's car. O'Hanesian filed an action against Thurlow, who failed to appear after being properly served by publication. O'Hanesian submitted evidence regarding the extent of his injuries at a bench trial, and the court awarded him $2,751,000 in compensatory damages and $1 million in punitive damages. O'Hanesian made a demand on Thurlow's insurer, and received the policy limit of

$100,000.

O'Hanesian demanded payment of $900,000 from State Farm, the maximum benefit available under his underinsured motorist coverage. O'Hanesian asserted that the default judgment entered against Thurlow conclusively established damages. State Farm refused to tender the requested payment, seeking instead to informally evaluate O'Hanesian's damages prior to tendering any money under the policy.

O'Hanesian sued State Farm for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing, arguing that the default judgment obtained against Thurlow established his damages and he was not required to submit to State Farm's evaluation of the dispute. State Farm demurred to O'Hanesian's complaint, arguing that it was not bound by the declaratory judgment against Thurlow, and that O'Hanesian's action was premature because no arbitration had occurred as required by the policies and by section 11580.2, subdivision (f). The trial court granted State Farm's demurrer without leave to amend and dismissed the action. O'Hanesian appealed.

The Court of Appeal held that O'Hanesian must arbitrate the issues of liability and damages with State Farm, and that the arbitrator is free to consider whether O'Hanesian's default judgment against Thurlow conclusively established his damages. O'Hanesian sought review in this court.

**DISCUSSION**

*4 We have interpreted the scope of section 11580.2, subdivision (f) on three occasions, explaining the types of issues that should be determined by arbitration. (See *Orpustan v. State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 103 Cal.Rptr. 919, 500 P.2d 1119(*Orpustan* );*Van Tassel, supra,* 12 Cal.3d 624, 116 Cal.Rptr. 505, 526 P.2d 969;*Freeman, supra,* 14 Cal.3d 473, 121 Cal.Rptr. 477, 535 P.2d 341.) Numerous Court of Appeal decisions similarly have examined the scope of arbitral issues under section 11580.2, subdivision (f). (See, e.g., *State Farm Mut. Auto. Ins. Co. v. Superior Court* (1994) 23 Cal.App.4th 1297, 28 Cal.Rptr.2d 711 [whether insured could arbitrate issues of liability and damages under uninsured motorist provision of insurance policy where tortfeasor's insurer became insolvent

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----                                                                                              Page 5
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

more than one year following accident]; *Furlough v. Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 249 Cal.Rptr. 703 [whether arbitration provision mirroring § 11580.2, subd. (f) permitted arbitration of the extent of coverage and amount insurer must pay, in addition to issues of liability and damages]; *Hartford Accident & Indemnity Co. v. Jackson* (1983) 150 Cal.App.3d 111, 197 Cal.Rptr. 477 [whether issues of liability and damages arising out of a vehicle collision with a riderless horse were arbitrable].) Two common themes emerge from this line of cases: (1) arbitration of issues other than liability and damages is appropriate if the parties have contractually agreed to arbitrate more than is required by section 11580.2, subdivision (f); and, (2) only issues of liability and damages may be decided in an arbitral forum if the parties did not agree to arbitrate more than is required by section 11580.2, subdivision (f). (*Orpustan, supra,* 7 Cal.3d at p. 991, 103 Cal.Rptr. 919, 500 P.2d 1119;*Freeman, supra,* 14 Cal.3d at p. 485, 121 Cal.Rptr. 477, 535 P.2d 341.)

In *Orpustan,* we held that whether the plaintiff had been injured by an uninsured vehicle within the meaning of section 11580.2 and the plaintiff's insurance policy should be determined by arbitration. The plaintiff in *Orpustan* was injured when he swerved to avoid hitting another vehicle, and his truck went off the highway. (*Orpustan, supra,* 7 Cal.3d at p. 990, 103 Cal.Rptr. 919, 500 P.2d 1119.) The plaintiff filed a claim with his insurer, arguing that he had been involved in an accident with an uninsured vehicle.(*Ibid.*)Section 11580.2 defines an uninsured vehicle to include a hit-and-run vehicle causing bodily injury arising out of physical contact between the insured's vehicle and the hit-and-run vehicle. The plaintiff's insurer concluded that the accident did not involve physical contact with the hit-and-run vehicle, and denied the plaintiff's claim. The plaintiff then sought arbitration, and the defendant filed a motion for summary judgment. (*Orpustan, supra,* 7 Cal.3d at p. 990, 103 Cal.Rptr. 919, 500 P.2d 1119.) The defendant prevailed on its motion for summary judgment, arguing that the absence of the statutorily necessary physical contact between the plaintiff's vehicle and the hit-and-run vehicle precluded coverage. (*Id.* at p. 991, 103 Cal.Rptr. 919, 500 P.2d 1119.)

The arbitration provision of the insurance policy contained the language mandated by section 11580.2, subdivision (f), and further stated that if the parties " 'do not agree as to the amount payable hereunder,' " the parties may demand arbitration. (*Orpustan, supra,* 7 Cal.3d at p. 991, 103 Cal.Rptr. 919, 500 P.2d 1119.) We held that the parties' agreement to arbitrate the issue of "whether the insured 'is legally entitled to recover damages from the owner or operator of an uninsured automobile' " was sufficiently broad to encompass arbitration of whether the hit-and-run vehicle was an uninsured vehicle within the meaning of the statute and the plaintiff's policy. (*Id.* at pp. 991-992, 103 Cal.Rptr. 919, 500 P.2d 1119.) We reasoned that requiring a court to decide "jurisdictional facts" when the parties had agreed to arbitrate the questions in dispute would transform a procedure intended to result in prompt resolution " 'into one carrying all the burdens and delays of civil litigation, overlaid by jurisdictional uncertainty between successive tribunals.' " (*Id.* at p. 992, 103 Cal.Rptr. 919, 500 P.2d 1119, quoting *Felner v. Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 546, 86 Cal.Rptr. 178.)

*5 Relying on this rationale, we held in *Van Tassel* that "[u]nder the statute and the provisions for arbitration contained in an uninsured motorist provision such as that in the present case, ... jurisdictional facts, including the status of the claimant as an insured, are subject to determination by the arbitrator."(*Van Tassel, supra,* 12 Cal.3d at p. 627, 116 Cal.Rptr. 505, 526 P.2d 969.) In *Van Tassel,* the plaintiff's daughter was killed in an accident involving an uninsured vehicle. Consistent with section 11580.2, subdivision (b), the plaintiff's husband's insurance policy provided that an "insured" under the policy included the spouse and relatives of the named insured while residing in the same household as the named insured. (*Van Tassel, supra,* 12 Cal.3d at p. 625, 116 Cal.Rptr. 505, 526 P.2d 969.) The arbitration provision of the insurance policy provided that " 'whether the insured is legally entitled to recover ... damages, and (if so entitled) the amount thereof, shall be made ... in the event of disagreement, by arbitration....'"(*Id.* at p. 626, 116 Cal.Rptr. 505, 526 P.2d 969, italics omitted.) There was a factual dispute about whether the plaintiff's deceased daughter had been a resident of the plaintiff's household and was therefore covered under the insurance policy. (*Ibid.*) We held that whether a claimant constituted a covered person under the uninsured motorist policy was a "jurisdictional fact" to be resolved by arbitration. (*Id.* at p. 627, 116

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

Cal.Rptr. 505, 526 P.2d 969.)

Less than one year later, we were again called upon to consider the appropriate forum for the resolution of "jurisdictional facts." (*Freeman, supra,* 14 Cal.3d 473, 121 Cal.Rptr. 477, 535 P.2d 341.) In *Freeman,* the insured plaintiff was involved in a three-car accident. (*Id.* at p. 478, 121 Cal.Rptr. 477, 535 P.2d 341.) The plaintiff was hit by a vehicle, and the driver of that vehicle testified that he had been hit by a convertible, which had forced him to collide with the plaintiff's vehicle. (*Ibid.*) Within one year of the accident, the plaintiff filed a civil action against the driver of the vehicle that had collided with his car, and against several "Doe" defendants. (*Ibid.*) After a jury trial, a judgment was issued in favor of the defendant who had hit the plaintiff's vehicle. (*Ibid.*) Nearly three years after filing his civil action, the plaintiff demanded arbitration under the uninsured motorist provision of his insurance policy, and filed a motion to compel arbitration. (*Id.* at p. 479, 121 Cal.Rptr. 477, 535 P.2d 341.) The plaintiff's insurance policy contained an arbitration provision as required by section 11580.2, subdivision (f). (*Freeman, supra,* 14 Cal.3d at p. 478, 121 Cal.Rptr. 477, 535 P.2d 341.)

Section 11580.2, subdivision (i) then required that, within one year following an injury, an insured had to agree with his or her insurer as to the amount due under the policy, formally demand arbitration, or commence litigation against an uninsured motorist. Code of Civil Procedure section 1281.2 governs a trial court's discretion to order arbitration, and provides that if a valid written arbitration agreement exists and one party refuses to arbitrate, the court must order the parties to arbitrate the dispute unless the petitioner forfeited the right to compel arbitration. The issue in *Freeman* was whether the trial court was entitled to consider the forfeiture/statute of limitations issue, or whether an arbitrator should decide whether the plaintiff's motion to compel arbitration was time-barred and his right to arbitration therefore forfeited. (*Freeman, supra,* 14 Cal.3d at p. 479, 121 Cal.Rptr. 477, 535 P.2d 341.)

*6 We held that "[t]he issue of whether the right to compel arbitration has been waived by failure to comply with the [former] one-year [statute of] limitation is clearly one for the determination of the court pursuant to the provisions of section 1281.2 of the Code of Civil Procedure."(*Freeman, supra,* 14 Cal.3d at p. 485, 121 Cal.Rptr. 477, 535 P.2d 341.) Preliminarily, we noted that Code of Civil Procedure section 1281.2 requires a court to examine an arbitration agreement to determine whether there is a duty to arbitrate the controversy. (*Freeman, supra,* 14 Cal.3d at p. 480, 121 Cal.Rptr. 477, 535 P.2d 341.) We concluded that section 11580.2, subdivision (f) requires the parties to arbitrate the narrow issues of whether the insured is entitled to recover damages from the uninsured or underinsured motorist, and if so, the amount of those damages. (*Freeman, supra,* 14 Cal.3d at p. 480, 121 Cal.Rptr. 477, 535 P.2d 341.) We acknowledged the strong public policy favoring arbitration, but stated that "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable."(*Id.* at p. 481, 121 Cal.Rptr. 477, 535 P.2d 341.)

We distinguished our earlier holding in *Orpustan,* concluding that the holding permitting arbitration in that case was "based upon the language of the insurance policy" and was consistent with prior Court of Appeal decisions regarding the physical contact rule. (*Freeman, supra,* 14 Cal.3d at p. 482, 121 Cal.Rptr. 477, 535 P.2d 341.) However, we noted that *Orpustan* contained broad language regarding "jurisdictional facts," which we subsequently relied upon in *Van Tassel* to conclude that the issue of whether an insured was covered by an uninsured motorist policy was arbitrable. (*Freeman, supra,* 14 Cal.3d at p. 482, 121 Cal.Rptr. 477, 535 P.2d 341.) "Unfortunately, our holding [in *Orpustan* ] was stated in language whose breadth was an invitation to misinterpretation.... We here must correct that misinterpretation ."(*Freeman, supra,* 14 Cal.3d at p. 485, 121 Cal.Rptr. 477, 535 P.2d 341.)

*Freeman* clarified the concept of "jurisdictional facts," reasoning that the statute of limitations issue, "as opposed to others which we loosely and unfortunately termed 'jurisdictional' in *Orpustan* and in our later *Van Tassel* decision, is logically and legally prior to any consideration by the arbitrator of those other issues which, in the circumstances of the particular case, are a part of 'the entirety of the controversy' and whose determination may have the effect of precluding him from reaching the merits of the dispute. It was in this latter sense that we used the term 'jurisdictional' in describing those other issues-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----                                                                                                Page 7
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

i.e., in the sense that the arbitrator's consideration of the merits of the controversy must await his determination of them. In using this terminology, however, we in no way intended to indicate that the prior issue of waiver of the right to compel arbitration, which under the relevant statutes and the long line of decisions we have adverted to is a matter for the determination of the court upon a motion to compel arbitration, was to be swept along with those other issues into the area of arbitrative determination. While as we indicated in *Orpustan* and *Van Tassel* we favor full and complete determination by the arbitrator of matters properly submitted to him, we cannot allow our enthusiasm for the expeditious and economical disposition of such matters to intrude upon our responsibility to determine whether the right to compel arbitration has been waived through failure to seek it in a timely manner."(*Freeman, supra,* 14 Cal.3d at pp. 485-486, 121 Cal.Rptr. 477, 535 P.2d 341.)

\*7[1] Our holding in *Freeman* cannot be harmonized with our earlier holding in *Van Tassel.*In *Van Tassel,* we relied on the broad language in *Orpustan* to conclude that whether an individual was covered under her stepfather's insurance policy constituted a "jurisdictional fact" to be arbitrated despite the parties' agreement to arbitrate only whether an uninsured motorist was liable to the insured, and the extent of the damages, if any. (*Van Tassel, supra,* 12 Cal.3d at pp. 625, 627, 116 Cal.Rptr. 505, 526 P.2d 969.) We indicated in *Freeman* that our holding in *Orpustan* "was an invitation to misinterpretation," but we did not expressly overrule *Van Tassel's* overly broad interpretation of the *Orpustan* decision. (*Freeman, supra,* 14 Cal.3d at p. 485, 121 Cal.Rptr. 477, 535 P.2d 341.) We do so now. To the extent that *Van Tassel v. Superior Court, supra,* 12 Cal.3d 624, 627, 116 Cal.Rptr. 505, 526 P.2d 969 improperly permitted an arbitrator to determine issues other than liability and damages-the issues mandated by section 11580.2, subdivision (f) to be arbitrable, and the only issues the parties agreed to arbitrate-it is overruled. (See *Freeman, supra,* 14 Cal.3d at p. 485, 121 Cal.Rptr. 477, 535 P.2d 341.)

We recognize that the Court of Appeal in *Bouton* was bound by *Van Tassel;* its holding therefore necessarily applied the broad language of *Orpustan* to the parties' narrow arbitration agreement, requiring an arbitrator to determine whether Bouton was

covered under his sister's insurance policy. We, of course, are not similarly bound, and hold, consistent with our decision in *Freeman,* that section 11580.2, subdivision (f), "read literally, requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of the damages."(*Freeman, supra,* 14 Cal.3d at p. 480, 121 Cal.Rptr. 477, 535 P.2d 341.)

[2] Applying this rule to the *Bouton* controversy, we hold that a court, not an arbitrator, must determine whether Bouton is insured under his sister's policy. Whether Bouton is a covered person under the insurance policy is not a question regarding the underinsured tortfeasor's liability to the insured, or the amount of damages. Questions of coverage-that is, whether the claimant is insured and therefore entitled to take advantage of the protection provided by the policy at issue-must be resolved before an arbitrator reaches the two arbitrable questions pursuant to section 11580.2, subdivision (f). Here, the policy acknowledges as much, providing that "arbitration ... shall not address any other issues, including but not limited to, coverage questions."Coverage questions fall outside of the two issues necessarily arbitrable under section 11580.2, subdivision (f), and must therefore be decided by a court, not an arbitrator, if the parties have not agreed to arbitrate more than the statute requires.

[3] Applying this rule to the *O'Hanesian* controversy, we hold that it is for an arbitrator, and not a court, to decide whether the default judgment O'Hanesian obtained against the underinsured tortfeasor binds State Farm. As previously explained, O'Hanesian submitted evidence regarding the extent of his injuries arising out of his accident with an underinsured motorist at a bench trial, and the court awarded him $2,751,000 in compensatory damages and $1,000,000 in punitive damages. The judgment pertains directly to the underinsured tortfeasor's liability to the insured, and the amount of damages owed to the insured. The parties agreed to arbitrate, consistent with section 11580.2, subdivision (f), whether "the insured [is] legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and ... [i]f so, in what amount."

\*8 The parties do not and cannot dispute that the policy and section 11580.2, subdivision (f) provide that arbitration is the appropriate forum in which to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))

Page 8

address whether the underinsured tortfeasor is liable to O'Hanesian for the injuries he sustained in the automobile accident between the two, and, if so, the amount of damages. The parties dispute that arbitration is the appropriate forum in which to address whether State Farm is bound by the default judgment obtained against the underinsured tortfeasor. However, that question-whether State Farm is bound-is subsumed within the arbitrable issues of liability and damages. The entire controversy-whether O'Hanesian is entitled to damages arising out of his accident with the underinsured tortfeasor, and the amount thereof-is arbitrable. Whether the default judgment binds State Farm is a part of the controversy between the parties regarding liability and damages, and must be resolved by the arbitrator in the course of addressing the two statutorily mandated arbitrable issues.

An unusual feature of the *O'Hanesian* controversy is that both State Farm and O'Hanesian disagree with the Court of Appeal's holding that arbitration is appropriate to determine whether State Farm is bound by the default judgment obtained against the underinsured tortfeasor. O'Hanesian argues that a court should interpret an insurance contract and section 11580.2, that he did not agree to have this issue arbitrated, that having a court decide this significant issue of statewide importance would promote uniformity of decisions, and that it would be impractical to require him to engage in costly discovery only to have an arbitrator conclude that State Farm is bound by the default judgment obtained against the tortfeasor. Along similar lines, State Farm also argues that a court should determine whether State Farm is bound by the default judgment because the parties did not agree to arbitrate this issue, that a court decision will promote uniformity and consistency of decisions, and that the default judgment against the tortfeasor does not bind State Farm as a matter of law. O'Hanesian essentially argues that a court will conclude that State Farm is bound by the default judgment, obviating the need for arbitration, while State Farm argues that a court will conclude State Farm cannot be bound by the default judgment, necessitating arbitration to assess whether O'Hanesian is entitled to damages, and, if so, in what amount.

[4] It is certainly true, as O'Hanesian and State Farm argue, that parties cannot be compelled to arbitrate a

dispute if they have not agreed to do so, and no statute compels them to arbitrate. (*Freeman, supra,* 14 Cal.3d at p. 481, 121 Cal.Rptr. 477, 535 P.2d 341.) Indeed, a trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate. (Code Civ. Proc., § 1281.2.) However, State Farm and O'Hanesian did agree-as section 11580.2, subdivision (f) requires-to arbitrate "whether the insured is entitled to recover against the uninsured motorist and ... if so, the amount of the damages."(*Freeman, supra,* 14 Cal.3d at p. 480, 121 Cal.Rptr. 477, 535 P.2d 341.) As discussed above, the effect of the default judgment is an issue the arbitrator necessarily will address in the course of resolving the arbitrable controversy concerning the tortfeasor's liability to the insured, and the amount of damages. Accordingly, the parties' argument that they did not agree to arbitrate whether State Farm is bound by the default judgment O'Hanesian obtained against the tortfeasor is unavailing.

*9 State Farm and O'Hanesian both also argue that permitting an arbitrator to determine whether the default judgment obtained against the underinsured motorist binds State Farm does not promote uniformity of decisions because arbitrators are free to " 'base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10-11, 10 Cal.Rptr.2d 183, 832 P.2d 899.) This concern, however, must be balanced against the statutory requirement to arbitrate disputes between insureds and insurers concerning the damages an insured is entitled to recover based on an injury suffered as a result of an accident with an uninsured or underinsured motorist. (See § 11580.2, subd. (f); *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1053, 48 Cal.Rptr.2d 1, 906 P.2d 1057 ["The provisions of [section 11580.2] are deemed part of every uninsured and underinsured motorist policy."].)

[5] Concerns about uniformity must also be balanced against the strong public policy favoring arbitration of disputes when the parties so agree. The "Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] ... Indeed, more than 70 years ago this court explained: 'The policy of the law in recognizing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
Page 9
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal. Daily Op. Serv. 6980
**(Cite as: --- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.))**

arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' [Citation.] 'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.' " (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 9, 10 Cal.Rptr.2d 183, 832 P.2d 899, citations omitted.)

[6] Finally, O'Hanesian argues that the default judgment obtained against the underinsured tortfeasor binds State Farm at least with respect to O'Hanesian's umbrella policy, if not his general liability policy. O'Hanesian's argument is unavailing. The umbrella policy stated that "[t]his coverage will apply in accordance with the terms and conditions of [O'Hanesian's] underlying Uninsured Motorist Coverage."The uninsured motorist policy included an arbitration section pursuant to 11580.2, subdivision (f). Thus, under both policies, O'Hanesian and State Farm must arbitrate all disputes concerning liability and damages arising out of an accident between O'Hanesian and an underinsured motorist.

### DISPOSITION

We reverse the judgment of the Court of Appeal in *Boutonv. USAA Casualty Insurance Company,* and remand for further proceedings consistent with this decision. We affirm the judgment of the Court of Appeal in *O'Hanesian v. State Farm Mutual Insurance Company.*

WE CONCUR: GEORGE, C.J., KENNARD, BAXTER, WERDEGAR, CHIN, and CORRIGAN, JJ.

> FN1. All further statutory references are to the Insurance Code, unless otherwise indicated.

> FN2.Section 11580.2 governs both uninsured and underinsured motorist coverage. For purposes of this decision, the terms uninsured and underinsured are used interchangeably.

Cal.,2008.
Bouton v. USAA Cas. Ins. Co.
--- Cal.Rptr.3d ----, 2008 WL 2332004 (Cal.), 08 Cal.

Daily Op. Serv. 6980

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 2

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.))**

**H**Hillcrest Christian School v. City of Los Angeles
C.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
HILLCREST CHRISTIAN SCHOOL
v.
CITY OF LOS ANGELES.
**No. CV 05-8788-RGK (RCx).**


Dec. 20, 2006.

Hal D. Long, Hal D. Long Law Offices, Encino, CA,
Jennifer Lynn Monk, Robert H. Tyler, Advocates for
Faith and Freedom, Murrieta, CA, Timothy D.
Chandler, Alliance Defense Fund, Folsom, CA, for
Hillcrest Christian School.
Jeri L. Burge, Tayo A. Popoola, Los Angeles City
Attorney's Office, Michael J. Bostrom, Deputy City
Attorney, Los Angeles, CA, for City of Los Angeles.


**CROSS-MOTIONS FOR JUDGMENT ON THE
PLEADINGS**

R. GARY KLAUSNER, District Judge.

**I. *INTRODUCTION***

*\*1* Plaintiff, Hillcrest Christian School ("Hillcrest")
sued Defendant, the City of Los Angeles (the "City").
Hillcrest alleges that Los Angeles Municipal Code §§
12.24(E) and (F) ("zoning ordinance") are prior
restraints on speech and are facially unconstitutional
because they provide unbridled discretion to City
officials when reviewing conditional use permit
("CUP") applications.

Presently before the Court are Plaintiff's and
Defendant's cross motions, each seeking Judgment on
the Pleadings pursuant to Federal Rule of Civil
Procedure 12(c). For the reasons stated below, the
Court finds that Judgment in favor of Defendant is
proper.

**II. *FACTUAL BACKGROUND***

The following facts are alleged by the parties.

Hillcrest operates a private school located on Rinaldi
Street, in Los Angeles California (the "East
Campus"). The East Campus was originally approved
in 1964 for use as a sanctuary with a recreation hall,
nursery, Sunday school, library room, prayer room
and other related uses.

In 1976, the City approved a CUP allowing the East
Campus to be used as a school. The CUP allowed a
maximum of 230 kindergarten through sixth grade
students, and 35 preschoolers.[FN1]

> FN1. The East Campus grew continually
> over the following 30 years as the City
> granted later CUPs permitting a larger and
> larger school.

Over the years, Hillcrest purchased land across the
street from its East Campus. In 1999, Hillcrest
applied to the City for a CUP to build a new 5.5 acre
West Campus pursuant to LAMC § 12.24 U 24.
Hillcrest proposed a West Campus with a 75,000
square-foot secondary school that would
accommodate 600 students. Hillcrest also requested a
variance from the applicable building setback, wall
height, and parking regulations.

Because Hillcrest brings a facial challenge to the
zoning ordinance, it is unnecessary for the Court to
recount the tortuous procedural history which lead
ultimately to the City's denial of Hillcrest's CUP
application with respect to its proposed West
Campus.

On June 26, 2003, the City Planning Commission
held a public hearing on Hillcrest's application. Both
Hillcrest and the community were permitted to
testify. At the conclusion of the hearing, the City
Planning Commission rejected Hillcrest's request in
its entirety. The City Planning Commission mailed its
determination to Hillcrest and other interested parties
on July 25, 2003.

On August 5 2003, Hillcrest appealed the Planning
Commission's determination, in its entirety, to the
City Council. Hillcrest explained the basis for its

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 2
Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.))

appeal in a three-page document appended to the appeal. In this document, Hillcrest asserted its belief that the Planning Commission's denial of its application "deprived Applicant Hillcrest ... of [its] right to freedom of religion, speech, and association as well as [its] rights to due process and equal protection under the U.S. and California Constitutions."

On December 16, 2003, the City Council rejected Hillcrest's CUP application with respect to the West Campus. This action followed.

## III. *JUDICIAL STANDARD*

**\*2** "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."Fed.R.Civ.P. 12(c).

When deciding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c), a court must treat the allegations contained in the challenged pleading as true. *See Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990). Moreover, the court must resolve all doubts in the light most favorable to the nonmoving party. *See General Conference Corp. of Seventh Day Adventists v. Seventh Day Adventist Cong. Church,* 887 F.2d 228, 230 (9th Cir.1989). While the court must accept all material allegations in the pleading as true, the court need not accept as true conclusory allegations or legal characterizations. *New Net, Inc. v. Lavasoft,* 356 F.Supp.2d 1090, 1115 (C.D.Cal.2004). Like a motion to dismiss, "in deciding a motion for judgment on the pleadings, the court generally is limited to the pleadings and may not consider extrinsic evidence."*Id.* at 1115.However, the court may consider a document necessarily relied upon by the pleading, as long as the authenticity of the document is unchallenged. *Id.* at 1116.Moreover, the court may take judicial notice of matters of public record under Federal Rule of Evidence 201. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001). Judgment on the pleading is appropriate "when the moving party clearly establishe[s] on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."*Hal Roach Studios,* 896 F.2d at 1542.

## III. *DISCUSSION*

Hillcrest argues that the City's zoning ordinance is facially unconstitutional because it grants city officials "unbridled" discretion when deciding when and whether to grant a conditional use permit. (Pl. Mot. at 7:19.)

### A. *Hillcrest's Facial Challenge to LAMC § 12.24(E), (F) is Improper*

The exercise of religious beliefs is protected by the First Amendment's guarantee of free speech. *Widmar v. Vincent,* 454 U.S. 263, 267-270, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Regulations that provide officials with unfettered discretion to deny licenses or permits on the basis of the content of protected speech are unconstitutional. *City of Lakewood v. Plain Dealer Publ. Co.,* 486 U.S. 750, 769-72, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

However, "to be subject to a facial challenge, a licensing law 'must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat' of the risks of censorship."*S. Or. Barter Fair v. Jackson County,* 372 F.3d 1128, 1135 (9th Cir.2004) (quoting *Lakewood,* 486 U.S. at 757.

Hillcrest presumes that because its seeks to build a place of worship, the zoning ordinance [FN2] relied upon by the City to deny its CUP application regulates expressive, religious conduct and thereby implicates the free exercise clause of the First Amendment. The Court disagrees. Any impact upon expressive activity is incidental.

> FN2. The City's Zoning Ordinance, LAMC § 12.24(E), provides the following guidelines to city officials when deciding whether to grant or deny a CUP:
>
> In approving any conditional use, the decision-maker must find that the proposed location will be desirable to the public convenience or welfare, is proper in relation to adjacent uses or the development of the community, will not be materially detrimental to the character of the community, will not be materially detrimental to the character of

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.))

development in the immediate neighborhood, and will be in harmony with the various elements and objectives of the General Plan. In addition, the decision-maker shall make further findings required by Subsections U, V, W, and X and shall determine that the proposed conditional uses satisfies any applicable requirement for the use set forth in those sections. The decision-maker shall adopt written findings of fact supporting the decision based upon evidence in the record, including decision maker or staff investigations.

LAMC § 12.24(F) provides:

In approving the location of any condition, the decision-maker may impose those conditions, based upon written findings, which it deems necessary to protect the best interests of the surrounding property or neighborhood, to ensure that the development is compatible with the surrounding property or neighborhood, or to lessen or prevent any detrimental effect on the surrounding property or neighborhood or to ensure appropriate development in harmony with the objectives of the General Plan. The decision may state that the height and area regulations required by other provisions of this chapter shall not apply to the conditional use approved.

*3 "Laws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, such as the law requiring building permits, pose little danger of censorship and may therefore be challenged only by the usual as-applied method. In other words, a facial challenge is proper only if the statute by its terms seeks to regulate spoken words or patently expressive or communicative conduct, such as picketing or handbilling, or if the statute significantly restricts opportunities for expression."*S. Or. Barter Fair,* 372 F.3d at 1135 (citations omitted).

LAMC § 12.24(E) and (F) are laws of general applicability which do not by their terms seek to regulate spoken words or other patently expressive conduct. Accordingly, the Court finds that Hillcrest's facial challenge is improper. Judgment for Defendant is proper.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **denied.** Defendant's Motion for Judgment on the Pleadings is **granted.**

**IT IS SO ORDERED.**

C.D.Cal.,2006.
Hillcrest Christian School v. City of Los Angeles
Not Reported in F.Supp.2d, 2006 WL 5207228 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.