1   BRIAN S. KABATECK,  SBN 152054
    (bsk@kbklawyers.com)
2   RICHARD L. KELLNER,  SBN 171416
    (rlk@kbklawyers.com)
3   NIALL G. YAMANE,  SBN 127899
    (ny@kbklawyers.com)
4   KABATECK BROWN KELLNER LLP
    350 South Grand Avenue, 39th Floor
5   Los Angeles, California  90071
    Telephone: (213) 217-5000
6   Facsimile: (213) 217-5010

7   Attorneys for GREGORY BUONOCORE,
    an individual on behalf of himself
8   and all others similarly situated

9

10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15   GREGORY BUONOCORE, an individual          CASE NO. CV 08 0184 PJH
     on behalf of himself and all others similarly
16   situated;                                 PLAINTIFF'S MEMORANDUM OF
                                               POINTS AND AUTHORITIES IN
17                Plaintiff,                    OPPOSITION TO DEFENDANT'S
                                               MOTION FOR JUDGMENT ON THE
18           vs.                               PLEADINGS

19   STATE FARM MUTUAL AUTOMOBILE
     INSURANCE COMPANY; and DOES 1            JUDGE: The Honorable Phyllis Hamilton
20   through 10 inclusive;                     CTRM:  3
                                               DATE:  August 13, 2008
21                Defendants.                  TIME:  9:00 a.m.

22

23

24

25

26

27

28
                                      0

# TABLE OF CONTENTS

Page

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . 2

   A.  State Farm's Insurance Policy Terms. . . . . . . . . . . . . . . .2

   B.  The Underlying Accident and Third
      Party Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . .2

   C.  State Farm's Request for Reimbursement of
      Medical Payments. . . . . . . . . . . . . . . . . . . . . . . . . .3

III.  THE LEGAL STANDARD FOR MOTION FOR
    JUDGMENT ON THE PLEADINGS. . . . . . . . . . . . . . . . . .3

IV.  STATE FARM IMPROPERLY RELIES ON
    DISCOVERY RESPONSES TO PROVE SAREMI
    LIABLE WHERE ADMISSION OF SUCH EVIDENCE
    RELATING TO COMPROMISE NEGOTIATIONS IS
    BARRED UNDER FEDERAL EVIDENCE RULE 408. . . . . . . . . . . .4

   A.  State Farm Fails to Cite the Ninth
      Circuit Cases and Instead Cites
      Cases From Other Jurisdictions. . . . . . . . . . . . . . . . .7

V.  STATE FARM'S OTHER ARGUMENTS IN SUPPORT
   OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS
   ARE WITHOUT MERIT. . . . . . . . . . . . . . . . . . . . . . . .8

   A.  Plaintiff's Filing of An Underinsured
      Motorist Claims Does Not Constitute An
      Admission of Liability. . . . . . . . . . . . . . . . . . . . . 8

   B.  The Right Of Offset Pursuant to Insurance
      Code 11580.2(e) Is Different From The
      Right To Reimbursement In Section II,
      And Therefore Insurance Code 11580.2(e)
      Does not Support The Right To Reimbursement. . . . . . 9

i

C.   Insurance Code 11580.2(p)(5) Does Not
     Support State Farm's Application of Offset
     To The $25k In Medical Expenses Paid
     By State Farm. . . . . . . . . . . . . . . . . . . . . . . . 11

D.   "Limits of Liability Under Coverage U" Does
     Not Support State Farm's Reimbursement
     Provision. . . . . . . . . . . . . . . . . . . . . . . . . . 12

E.   In Any Event, There Must Be A Judicial
     Determination of Liability Before State Farm
     Has The Right of Reimbursement Pursuant
     To the Terms of Its Form Automobile Policy. . . . . . 13

     1.   A Release of Liability Extinguishes
          All Rights and Therefore Bars
          "Liability" Required by Section II. . . . . . . . . 13

     2.   The Rule of Contract Interpretation
          Requires The Reimbursement Clause
          In Section II To Be Interpreted To
          Protect The Insured's Reasonable
          Expectation If The Term
          "Liable" Is Ambiguous. . . . . . . . . . . . . . . . 14

VI.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii

1

**TABLE OF AUTHORITIES**

2

**Fed. Cases:**

3

*Airborne Freight Corp. v. McPherson*

4

    (9th Cir. 1970) 427 F.2d 1283, 1285. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5

*Blu-J, Inc. v. Kemper C.P.A. Group*

6

    (11th Cir. 1990) 916 F2d 637. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

7

*Broadcort Capital Corp. v. Summa Med. Corp.,*

8

    (10th Cir. 1992) 972 F2d 1183. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

9

*California for Disability Rights, Inc. v. Dep't of Trasnp*

10

    (2008) 249 F.R.D. 334. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3,4

11

*Clemco Industries v. Commercial Union Ins . Co.,*

12

    (1987) 665 F.Supp 816, 829. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

*Collier v. Simpson Paper Co.,*

14

    (1996) U. S. Dist. Lexis 20102. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15

*Dynamic Random Access Memory Antitrust Litig.,*

16

    (2007) 516 F.Supp2d 1072. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3,4

17

*Flintkote Co. v. Gen. Accident Assur. Co. of Can*

18

    (2006) 410 F.Supp2d 875, 881. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19

*Green v. Baca*

20

    (2005) 226 F.R.D. 624. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

21

22

*Hudspeth v. Commissioner*

23

    (9th Cir. 1990) 914 F.2d. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,7

24

*L.H. Schwartzenegger*

25

    (2008) Dist. Lexis 932. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26

*Kirsch v. Barnes*

27

    (9th Cir. 1959) 263 F2d 692, 695. . . . . . . . . . . . . . . . . . . . . . . . 14

28

1    *Marder v. Lopez*
2        (2006) 450 F.#d 445, 449. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
3    *Ramada Dev. Co. v. Ranch*
4        (5th Cir. 1981) 644 F.2d 1097. . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
5    *Rondor Music Int'l Inc. v. TVT Records LLC*
6        (2006) Lexis 97118. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
7    *Sun Savings and Loan Ass'n v. Dierdorff*
8        (9th Cir. 1987) 825 F.2d 187. . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
9    *Towerridge, Inc. v. T.A.O., Inc.*
10        (10 Cir. 1997) 111 F.3d 758. . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
11   *United States v. Contra Costa Water District*
12        (9th Cir. 1982) 678 F.2s 90. . . . . . . . . . . . . . . . . . . . . . . . . . . .5,6
13   *Vulcan Hart Corp. v. NLRB,*
14        (8th Cir. 1983) 718 F.2d 269. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
15   **State Cases:**
16   *Clarendon Nat'l Ins. Co. v. Ins. Co. of the West*
17        (2006) 442 Supp. 2d 914, 922. . . . . . . . . . . . . . . . . . . . . . . . . . 13
18   *Interinsurance Exch. of the Auto Cub of So. Cal. V. Bailes*
19        (1963) 219 Cal.Ap.2d 830. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
20   *Firemen's Ins. Co. of Neward v. Diskin*
21        (1967) 255 Cal.App.2d 502. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
22   *Garamendi v. Mission Inc., Co.,*
23        (2005) 131 Cal.App. 4th 30, 42. . . . . . . . . . . . . . . . . . . . . . . . . 13,15
24   *Holcomb v. Hartford Casuslty Ins. Co.*
25        (1991) 230 Cal.App.3d 1000,1007. . . . . . . . . . . . . . . . . . . . . . .15
26   *Rudd v. Cal. Cas. Gen. Ins. Co.*
27        (1990) 219 Cal. App.3d 948, 956. . . . . . . . . . . . . . . . . . . . . . .11,12
28

iv

*Viking Ins. Co. v. State Farm Mutual Auto Ins. Co.,*

(1993) 17 Cal.App.4th 540, 553. . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,10,12

*Wood v. Currey*

(1881) 57 Cal. 208, 209. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**Statutes:**

*California Insurance Code* 11580.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*California Insurance Code* 11580.02(e) . . . . . . . . . . . . . . . . . . . . . . . . . . .9,10

*California Insurance Code* 11580.02(p)(5) . . . . . . . . . . . . . . . . . . . . . . . . . .11

PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS (CV 08 0185 PJH)

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      In its motion for judgment on the pleadings, State Farm Mutual Automobile Insurance

4   Company (hereinafter "State Farm") contends that the contractual condition predicate of its

5   medical payment reimbursement provision in its form automobile policies, that payments made

6   to plaintiff Gregory Buonocore ("Plaintiff") were from a person "liable for [his] bodily injury,"

7   has been established because: (a) pursuant to a settlement agreement, a third party motorist

8   acknowledged he was liable (Motion, Pages 10-11); and (b) Plaintiff has commenced an

9   underinsured motorist claim.  (Motion, Pages 12-15).  State Farm does not otherwise contest the

10  sufficiency of the allegations of the four causes of action in this class action.

11     State Farm's argument regarding the third party motorist's admissions made in

12  connection with a settlement agreement is without merit because such evidence is inadmissible

13  under Federal Rules of Evidence, Rule 408 (hereinafter, "Rule 408").  *Hudspeth v.*

14  *Commissioner*, 914 F.2d 1207, 1213 (9th Cir. 1990).  This is so regardless of the fact that State

15  Farm was not a party to the settlement between the third party motorist and Plaintiff.  *Id.*[1]

16     State Farm's argument that Plaintiff's mere filing of an underinsured motorist claim

17  constitutes a determination of third party liability is similarly without merit.  In fact, it is nothing

18  more than a pleading that will lead to a potential arbitration.  In and of itself, it has no legal

19  significance.

20     In addition to the foregoing, State Farm's selection of the language "liable for the bodily

21  injury" necessitates a judicial determination of liability as the only way our judicial system

22  determines whether a party is "liable" is by way of a civil verdict of judgment.

23     This class action seeks damages and other relief for State Farm's policy of seeking

24  reimbursement of medical expenses it has paid to insureds pursuant to its medical payments

25

26  [1]     Apparently, State Farm relies upon contrary rulings from other Circuits that refuse to
extend Rule 408 to exclude evidence used by other parties in other claims.  However, since this
27  Court is bound by Ninth Circuit precedent and not that of other Circuits, State Farm's reliance
on such cases is entirely without merit.
28

1

coverage, whenever its insureds recover money from a party who executes a settlement agreement, based upon the contention that the settlement constitutes a determination of liability with respect to the third party motorist. (Comp ¶ 20-23). This purported reason is without merit as there must be a determination of liability – and not just the existence of a settlement agreement between the insured and a third party motorist. This is because the "settlement" cannot, as a matter of law, constitute a determination of liability.

Finally, in the context of the disposition of this class action, Plaintiff requests that in the event this Court determines that this is a truly anomalous situation, where this settlement included a requirement that the third party motorist submit an admission of liability, that leave be granted to amend the complaint to substitute a new class representative. *L.H. v. Schwartzenegger,* No. CIV S062042, 2008 U.S. Dist LEXIS 9632 at *21(E.D.Cal. Jan. 29, 2008) (granting leave to substitute class representative).[2]

## II.    FACTUAL ALLEGATIONS

### A.    State Farm's Insurance Policy Terms

On July 5, 2007, Plaintiff entered an automobile insurance agreement with State Farm. This insurance coverage included medical coverage in the amount of $25,000. Comp ¶ 14. The form insurance policy also contained a medical payment reimbursement provision in "Section II – Medical Payments – Coverage C" (hereinafter, "Section II"), *See* Exhibit. 1., which provides as follows:

> "If the person to or for whom we make payment recovers proceeds from any party **liable** for the bodily injury, that person shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment."

*See* Ex. 1, p.11 (emphasis added)

### B.    The Underlying Accident and Third Party Litigation

On January 26, 2005, Plaintiff, while driving his vehicle, was struck by a third party motorist, Ali A. Saremi (hereinafter "Saremi"). Comp ¶ 15. As a result of this accident,

---

[2]    Plaintiff requested that State Farm enter a stipulation to amend the complaint to add a new party. Surprisingly, State Farm has refused to enter such a stipulation, necessitating a separate motion to amend the complaint. *See* (Yamane Decl.)

2

1  Plaintiff sustained personal injuries. Comp ¶ 15.  Pursuant to its medical coverage clause in

2  Section II of Plaintiff's automobile policy, State Farm paid the $25,000 medical coverage limit.

3       Plaintiff commenced an action against Saremi.  Initially, Saremi denied liability.  (*See*

4  request for admission Exhibit 2 and Saremi's Response to Admissions, Nos. 1 and 2 Exhibit 3).

5  Thereafter, Plaintiff and Saremi entered settlement negotiations.

6       On July 5, 2007, Plaintiff entered a settlement agreement with Saremi, which was

7  memorialized in a letter between counsel for the Plaintiff and Saremi in which Saremi agreed to

8  admit liability. *See* Exhibit 4.  Pursuant to this condition of the settlement another set of

9  requests for admissions were propounded by Plaintiff *See* Exhibit 5.  In compliance with this

10  settlement agreement, Saremi's counsel served the settlement mandated liability admissions.

11  *See* Exhibit. 6.

12       On July 24, 2007, pursuant to the settlement conditions, Plaintiff and Saremi signed a

13  "Release in Full of All Claims" which contained release of liability and denial of liability

14  clauses as to Saremi with which the Plaintiff agreed and signed his consent. Exhibit 7 Comp ¶

15  16.

16       **C.    State Farm's Request for Reimbursement of Medical Payments**

17       Following the Saremi settlement, State Farm asserted its reimbursement request,

18  pursuant to Section II, and demanded that Plaintiff reimburse State Farm the $25K in medical

19  bills it paid.  Plaintiff disputes State Farm's right to reimbursement on the grounds that he has

20  not recovered money from a "liable" party as required by Section II.  Comp¶ 20-22

21  **III.    THE LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE**

22  **PLEADINGS**

23       It is well established that the "standard applied by the court in treating a motion for

24  judgment on the pleadings is the same as that applied by the court in considering motions to

25  dismiss under [Rule] 12(b)(6)." *In re Dynamic Random Access Memory Antitrust Litig.*, 516

26  F.Supp.2d 1072, 1083 (N.D. Cal. 2007).

27       When considering a motion for judgment on the pleadings under Rule 12(c), "[a]ll

28  allegations of fact by the party opposing the motion are accepted as true, and are construed in

3

1    the light most favorable to that party." *Californians for Disability Rights, Inc. v. Dep't of*

2    *Transp.*, 249 F.R.D. 334, 337 (N.D. Cal. 2008). The district court "may consider the allegations

3    made in the Complaint and the answer, materials attached to the Complaint in accordance with

4    Federal Rule of Civil Procedure 10(c), and any other materials that are (1) specifically referred

5    to in the Complaint, (2) central to the plaintiff's claim, and (3) of uncontested authenticity." *Id.*

6    "Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in

7    support of its claim which would entitle it to relief." *Sun Savings and Loan Ass'n v. Dierdorff*,

8    825 F.2d 187, 191 (9th Cir. 1987).

9          Rule 12(c) does not mention leave to amend; however, "courts generally have discretion

10   in granting 12(c) motions with leave to amend." *In re Dynamic Random Access Memory*

11   *Antitrust Litig.*, 516 F.Supp.2d at 1084. "There is a strong policy in favor of allowing

12   amendment, unless amendment would be futile, results from bad faith or undue delay, or will

13   unfairly prejudice the opposing party." *Id.*

14         To the extent the Court finds that Plaintiff has not adequately raised *any* of the legal

15   theories discussed herein, Plaintiff respectfully requests leave to amend to include those

16   allegations and claims.

17   **IV.    STATE FARM IMPROPERLY RELIES ON DISCOVERY RESPONSES TO**
18   **      PROVE SAREMI LIABLE WHERE ADMISSION OF SUCH EVIDENCE**
     **      RELATING TO COMPROMISE NEGOTIATIONS IS BARRED UNDER**
19   **      FEDERAL EVIDENCE RULE 408**

20         State Farm's motion for judgment on the pleadings is improperly based upon admissions

21   obtained from a third party during the course of settlement negotiations.  As a matter of law,

22   such admissions are inadmissible pursuant to Rule 408.  According to State Farm, because a

23   third party acknowledged liability pursuant to a settlement, the third party is "liable for

24   [Plaintiff's] injuries" and thus State Farm is entitled to reimbursement under the terms of its

25   form insurance policy.

26         State Farm claims that Rule 408 is inapplicable in this case because the admission of

27   "liability" was obtained as part of a settlement with a third party. (Mot. at 9:10-12.)  In making

28   this argument, State Farm ignores (and, in fact, fails to cite) the law in this Circuit that Rule

                                                4

1    408's exclusion "extends to evidence of completed settlements in other cases where the

2    evidence is offered against the compromiser." *Green v. Baca*, 226 F.R.D. 624, 640 (C.D. Cal.

3    2005). Indeed, the Ninth Circuit has ruled that "Rule 408 does apply to situations where the

4    party seeking to introduce evidence of a compromise was not involved in the original

5    compromise." *Hudspeth v. Commissioner*, 914 F.2d 1207, 1213 (9th Cir. 1990).[3]

6           Courts have also held that Rule 408 bars admissibility of discovery statements and

7    conduct generated to fulfill settlement negotiations. The test whether statements fall under this

8    rule is "whether the statements or conduct were intended to be part of the negotiations toward

9    compromise." *Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 642 (11th Cir. 1990 (internal

10   citations omitted). The *Blu-J* Court *excluded* deposition testimony and a report prepared by the

11   parties generated as part of settlement negotiations because the evaluation and deposition fell

12   squarely within the test. In the instant case, the evidence at hand is analogous to the Blu-J's

13   court deposition testimony, both were intended to be part of negotiations toward compromise

14   and thus this court should follow Blu-J's example and exclude evidence that "*would not have

15   existed but for the negotiations.*" *Ramada Dev. Co. v. Rauch,* 644 F.2d 1097, 1106-7 (5th Cir.

16   1981) (emphasis added).[4]

17          The Rule 408 policy of protecting all statements and conduct made in furtherance of

18   settlement negotiations is clearly spelled out by the Ninth Circuit. *See United States v. Contra

19   Costa Water District*, 678 F.2d 90, 92 (9th Cir. 1982.) The Ninth Circuit looks to the Advisory

20   Committee's Note following Rule 408 and concludes, "by preventing settlement negotiations

21

22   _____

23   [3]    *See United States v. Contra Costa Water District*, 678 F.2d 90, 92 (9th Cir. 1982) ("we
     give additional importance to the fact that appellant [seeking to introduce the evidence] was not

24   a party to the . . . litigation or the settlement conferences"); *See also Green v. Baca*, 226 F.R.D.
     at 641, (Rule 408 clearly prohibits the introduction of evidence of settlement negotiations to

25   prove liability where plaintiff sought to introduce evidence of defendant Sheriff's past over-
     detention settlements as proof of over-detention policy).

26   [4]    District Courts in the Ninth Circuit have followed both *Ramada* and *Blu-J, Inc. See

27   Collier v. Simpson Paper Co.*, No. CIV. S941648, 1996 U.S. Dist. LEXIS 20102, at * 12, n. 2
     (E.D. Cal. Nov. 22, 1996) (following *Ramada* and *Blu-J* to hold that motion to exclude

28   warranted merit); *Rondor Music Int'l, Inc. v. TVT Records LLC*, No. CV 052909, 2006 U.S.
     Dist. LEXIS 97118 at *30.

1   from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the

2   policy toward settlement." *Id.* Further, the policy behind Rule 408 is clearly to support

3   "freedom of communication with respect to compromise by preventing the presentation of either

4   party's statements made during negotiations." *Clemco Industries v. Commercial Union Ins. Co.*,

5   665 F. Supp. 816, 829 (N.D. Cal. 1987) (internal citations omitted).

6           Here, the alleged admission occurred as a condition of a settlement. Indeed, the third

7   party motorist initially denied liability in the requests for admissions that were propounded in

8   the litigation. *See* Exhibit 2 and 3.  Pursuant to the terms of a July 5, 2007 settlement, an

9   expressed condition of the settlement was that the third party motorist was required to provide a

10  verified admission of liability:

11          "This shall confirm the conditional settlement that we have reached. **We
            have agreed to settle this case conditionally as follows:**

12              1.  Defendant Ali A. **Saremi must provide verified liability admissions**
13                  to the requests for admissions contained in Plaintiff's Request for
                    Admissions, Set No. 1, served today."

14

15  *See* Exhibit. 4 (emphasis added)

16          In compliance with this settlement agreement, Saremi's counsel served the settlement

17  mandated liability admissions with a confirming letter stating:

18          **"As a part of our settlement,** enclosed are Mr. Saremi's
            declaration and response to request for admissions."

19

20  *See* Exhibit 6 (emphasis added)

21          These agreed upon statements regarding liability were an essential component of the

22  negotiations and terms of settlement per both plaintiff and defense attorneys in the underlying

23  case.

24          Following this settlement agreement, plaintiff executed a release proffered by Saremi.  In

25  this release, plaintiff agreed to waive all his rights and claims:

26              **RELEASE IN FULL OF ALL CLAIMS AND RIGHTS**
27              **(…) I release and forever discharge** AFSANEH HIYDARYNEJAD
                ALI **SAREMI, their successors in interest, assigns, principals,**
28              **insurers, agents and representatives from any and all rights, claims,**
                **demands, and damages of any   kind, known or unknown, existing**

6

**or arising the future, and accordingly do hereby expressly, voluntarily, knowingly and advisedly WAIVE any and all rights granted to me under California Civil Code § 1542 (…)**

**I understand that this is a compromise settlement of all my claims arising out of the accident referred to above, and there is no admission of liability…\* . [\*However, defendant' discovery responses admit liability.]**

*See* Exhibit. 7 (emphasis added)

The two key and relevant components of this release are: 1) Plaintiff released Saremi from all rights, claims, demands and damages, and 2) Plaintiff acknowledges this is a compromise settlement and ***there is no admission of liability***. The asterisked comment regarding the negotiated settlement statements merely acknowledges the existence of Saremi's settlement admissions, while at the same time maintaining the language that there is "no admission of liability."

A.    **State Farm Fails to Cite the Ninth Circuit Cases And Instead Cites Cases From Other Jurisdictions**

To support its flawed position, State Farm cites only several out-of-circuit cases. Aside from the fact that such precedent is irrelevant in the face of binding Ninth Circuit law that is directly on point *Hudspeth v. Commissioner*, 914 F.2d 1207, 1213 (9th Cir. 1990), the cases cited by State Farm are entirely distinguishable.

State Farm cites a Tenth Circuit case, *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758 (10th Cir. 1997). In *Towerridge*, the court considered whether Plaintiff could admit evidence of money paid to defendants pursuant to a settlement in another action. The defendants argued that that any evidence related to their settlement in this other action was inadmissible. The court held that "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." *Id.* at 770. However, the court went on to qualify this statement by stating:

"In any event, *Rule 408 only bars admission of evidence relating to settlement discussions if that evidence is offered to prove 'liability for or invalidity of the claim or its amount,' and the evidence at issue here was not offered for that forbidden purpose.*"

*Id.* at 770 (emphasis added). By contrast, in this case, State Farm seeks to use Saremi's

7

1  admissions to prove his liability.  Accordingly, even under *Towerridge*, Saremi's settlement
2  acknowledgment of liability is inadmissible.

3      State Farm also cites *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183
4  (10th Cir. 1992), another Tenth Circuit case.  In *Broadcort*, the court held that "Rule 408 did not
5  bar . . . evidence because it [was] related to settlement discussions that involved a different
6  claim than the one at issue in the [a]t trial." *Id.* at 1194.  The evidence in question were
7  settlement discussions that were "offered to show the workings of [a] loan scheme . . . [and] *not*
8  *admitted to show liability for the claim or its amount*." *Id.* at 1195 n.16 (emphasis added).  Here,
9  again, State Farm is seeking to prove liability by relying upon admissions made pursuant to a
10  settlement agreement.  Accordingly, *Broadcort* is completely inapposite.

11      State Farm cites to an Eighth Circuit case, *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269
12  (8th Cir. 1983).  In *Vulcan*, a case involving labor disputes, evidence of negotiations between
13  strikers and the employer was admitted in court.  The court held that ". . . Rule 408 excludes
14  evidence of settlement offers only if such evidence is offered to prove liability for or invalidity
15  of the claim under negotiation. To the extent that the evidence is offered for another purpose . . .
16  the evidence is admissible." *Id.* at 277.  The evidence was deemed admissible ***because it was***
17  ***not used to prove liability***. *Id.*  By contrast, in this case, State Farm is seeking to use the Salemi
18  admissions to prove liability.

19      Accordingly, even if this Court were to look beyond the controlling precedent of this
20  Circuit, State Farm's motion for judgment on the pleadings fails.

21  **V.    STATE FARM'S OTHER ARGUMENTS IN SUPPORT OF ITS MOTION FOR**
22  **JUDGMENT ON THE PLEADINGS ARE WITHOUT MERIT**

23      **A.    Plaintiff's Filing of An Underinsured Motorist Claim Does Not Constitute**
24      **An Admission of Liability**

25      State Farm asserts that the mere filing of an uninsured/underinsured motorist claim
26  constitutes irrefutable proof that the third party motorist is "liable" for purposes of Section II
27  reimbursement in its form automobile policy with Plaintiff.  This argument fails as it is contrary
28  to the Insurance Code, contrary to State Farm's insurance policy language and lacks supporting

8

1    case authority.

2         Pursuant to Insurance Code 11580.2(e) and the terms of State Farm's own insurance

3    policy, the submission of an uninsured/underinsured motorist claim is for the purpose of having

4    an impartial arbitrator determine whether the insured is legally entitled to recover damages.

5    Neither the Code nor State Farm's policy state that the mere filing of the claim determines

6    whether a party is "liable." Therefore, State Farm's position is not only contrary to the

7    procedures established by 11580.2(e), but also inconsistent with the procedures established by

8    its own policy.

9         The cases cited by State Farm only support the uncontested notion that prevailing on an

10   underinsurance claim requires proof a third party motorist is liable. In *Interinsurance Exch. of*

11   *the Auto. Club of So. Cal.*, *v. Bailes* 219 Cal.App.2d 830, 833 (1963) the insured, who was

12   injured in an auto accident, appealed a judgment which confirmed an arbitrator's award denying

13   recovery to the insured under an uninsured motorist claim. The court held that "*to prevail* in the

14   arbitration, it was obligatory on defendant to prove that [third party] motorist was liable." 19

15   Cal.App.2d at 836 (Emphasis added). Thus, this case fails to support State Farm's argument

16   that filing an underinsurance claim establishes liability.

17        In *Firemen's Ins. Co.*, *v. Diskin* 255 Cal.2d 502 (1967) the insureds were injured in a

18   taxicab accident and instituted arbitration proceedings against the insurer under their uninsured

19   motorist coverage. *Id.* at 504. The court held that "uninsured motorist coverage is secondary

20   and derivative, and . . . is *contingent* on the insured's right to legal recovery against the

21   tortfeasor." *Id.* (Emphasis added). This case also does not establish that the mere filing of an

22   uninsured/underinsurance claim establishes liability.

23        Thus, State Farm's claim that Plaintiff's submission of an underinsurance claim

24   etablishes Saremi's liability is meritless.

25        **B.    The Right Of Offset Pursuant to Insurance Code 11580.2(e) Is Different**

26              **From The Right To Reimbursement In Section II, and Therefore Insurance**

27              **Code 11580.2(e) Does Not Support The Right To Reimbursement.**

28        California courts have clearly stated that the mere existence of a statutory credit right

9

1   does not justify its application, unless it is set forth in the insurance policy.  "Simply because the

2   statutes allow [the insurance carrier] to claim [a] credit does not mean that its insurance policy

3   with [the insured] allows it to do so. . . . [W]e must look to the language of the policy to

4   determine whether it provides for the credit in question." *Viking Ins. Co. v. State Farm Mutual*

5   *Auto. Ins. Co.*, 17 Cal.App.4th 540, 553 (1993).  Given that the insurance policy does not apply

6   the 11580.2(e) offset to the Section II reimbursement clause, State Farm's claim that it should

7   be so applied is without merit.

8          Throughout its motion, State Farm confuses the principles of offset and reimbursement.

9   Those concepts are fundamentally different.  Consequently, State Farm attempts to use the

10  statutory right of offset pursuant to Insurance Code 11580.2(e)[5] to justify its defective

11  contractual right of reimbursement in Section II is completely without merit.

12         The right of reimbursement is created contractually in Section II of the State Farm's

13  insurance policy.  It allegedly works as follows: Plaintiff is in an accident. State Farm pays

14  Plaintiff's medical bills. Plaintiff recovers money from a "liable" party. Plaintiff must reimburse

15  State Farm for all medical bills it paid

16         The right of offset is a statutory creation of Insurance Code 11580.2(e) and it works like

17  this: Plaintiff is in an accident. State Farm pays plaintiff's medical bills. Plaintiff pursues an

18  uninsured/underinsured motorist claim and recovers money. State Farm is entitled to offset, i.e.

19  reduce, the uninsured/underinsured motorist recovery by the amount of medical bills it paid.

20  Since the offset is only reducing the uninsured/underinsured motorist recovery, plaintiff is not

21  paying any money out of pocket to State Farm. This is a key difference.

22         The conditions giving rise to the statutory right of offset are different from, and therefore

23  do not support, State Farm's contractual reimbursement clause.  First, the language of

24  11580.2(e) does not apply the right of offset to the contractual conditions giving rise to

25

26  _____
    [5]     California Insurance Code 11580.2(e) provides: "The policy or endorsement added
    thereto *may provide* that if the insured has valid and collectible automobile medical payment
27  insurance available to him or her, the damages that the insured shall be entitled to recover from
    the owner or operator of an uninsured motor vehicle shall be reduced for purposes of uninsured
28  motorist coverage by the amounts paid or due to be paid under the automobile medical payment
    insurance. Cal. Ins. Code § 11580.2(e) (Emphasis added).

1   reimbursement, i.e. 11580.2(e) does not allow the insurance company to apply the offset right to

2   the reimbursement scenario.  Second, the language of Section II does not incorporate the more

3   narrow conditions under which offset applies pursuant to 11580.2(e).  Third, an offset deducts

4   money only from an uninsured/underinsured motorist recovery where the insured's

5   uninsured/underinsured coverage has stepped in to provide additional insurance protection to

6   make the insured whole.  On the other hand, Section II reimbursement can take money out of the

7   insured's pocket even if there is no uninsured/underinsured coverage.  This is significant

8   because in the absence of uninsured/underinsured coverage, the insured may not be made whole

9   as the available insurance may be inadequate.

10      **C.    Insurance Code 11580.2(p)(5) Does Not Support State Farm's Application of**

11           **Offset To The $25k In Medical Expenses Paid By State Farm**

12      State Farm cites Insurance Code 11580.2(p)(5) in support of its claim that the right to

13   offset is applicable to the $25K in medical expenses it has paid.  This argument fails because the

14   language in this section only applies to money from a tortfeasor, and not from the insured's own

15   insurance company.  This section provides:

16       "The insurer paying a claim under this subdivision shall, to the extent of the
         payment, be entitled to reimbursement or credit in the *amount received by the*
17       *insured from the owner or operator of the underinsured motor vehicle* or the
         insurer of the owner or operator."
18

19   Cal. Ins. Code § 11580.2(p)(5) (emphasis added)

20      This section does not support State Farm's offset claim because Section 11580.2(p)(5)

21   applies only to amounts received by the insured from a third party motorist, and *not* medical

22   payments paid by the insurer itself to the insured.  The California Court of Appeal ruled in *Rudd*

23   *v. Cal. Cas. Gen. Ins. Co.*, 219 Cal.App.3d 948, 956 (1990), that section 11580.2(p)(5) does not

24   authorize an offset for amounts paid under workers' compensation coverage under section

25   11580.2(h),[6] as follows:

26       "We do not interpret section 11580.2 as permitting duplicative setoffs. Section 11580.2,

27

28   ───────────────
     [6]     State Farm concedes that section 11580.2(e) is analogous to 11580.2(h). *See* Mot. at
     15:16-17; *Rudd*, 219 Cal.App.3d at 954.

                                          11

subd. (p)(5) grants the insurer who pays an underinsured motorist claim only the right to "reimbursement or credit in the amount received by the insured from the underinsured tortfeasor. . . . *Where the [insured] does not receive or retain such amounts from the tortfeasor, section 11580.2, subd. (p)(5)'s setoff will be inoperable.*"

*Id.* (emphasis added); *see also Viking Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 17 Cal.App.4[th] 540, 599 ("The offsets allowed under subdivisions [11580.2](p)(5) are only for those amounts paid to the insured or received by the insured from legally liable parties.").

Furthermore, the very wording of section 11580.2(p)(5) also precludes it from being used to support a Section II reimbursement claim against State Farm's $25,000 medical payment as this money was not paid by the "tortfeasor." Therefore, State Farm may not invoke section 11580.2(p)(5) to seek reimbursement of the $25,000 in medical payments it has paid to Mr. Buonocore. *See Rudd* 219 Cal.App.3d at 956 ("[T]o the extent Insured did not receive (or retain) proceeds from the tortfeasor . . . insurer may not additionally assert a subdivision (p) setoff against the underinsured motorist coverage.").

**D.    "Limits Of Liability Under Coverage U" Does Not Support State Farm's Reimbursement Provision**

State Farm cites "Limits of Liability Under Coverage U, Section 4" for the proposition that State Farm does not have to pay plaintiff's medical expense twice. This contention is without support as the terms of Section 4 do not extend to the right of reimbursement. Section 4 provides:

"The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage."

Ex. A, p. 13.

Plaintiff does not contend that this section requires State Farm to pay plaintiff's medical expenses twice. Nonetheless, Section 4 is irrelevant to support State Farm's contractual reimbursement clause in Section II because: 1) Section 4 does not contain any language applicable to the reimbursement provisions of Section II, 2) Section 4 is contained in a completely different portion of the policy, i.e. Section III, while the reimbursement provision is in Section II, and therefore their terms are not related to one another, and 3) The language of

12

1  Section 4 only precludes State Farm from having to pay an insured's medical expenses twice. It

2  does not provide State Farm with the right to seek reimbursement for the medical expenses it

3  has paid.

4    **E. In Any Event, There Must Be A Judicial Determination of Liability Before**

5      **State Farm Has The Right of Reimbursement Pursuant to the Terms of Its**

6      **Form Automobile Insurance Policy**

7    State Farm's entitlement to reimbursement, as set forth in Section II of State Farm's

8  insurance policy, necessarily requires a judicial determination of liability – not just an

9  inadmissible statement by a third party in the context of settlement negotiations.  In pertinent

10  part, Section II provides as follows:

11    "If the person to or for whom we make payment recovers proceeds from any
12    party **liable** for the bodily injury, that person shall hold in trust for us the
  proceeds of the recovery, and reimburse us to the extent of our payment."
13

14  *See* Exhibit. 1, p.11 (Emphasis in original removed, and emphasis added).

15    The plain use of the word "liable" requires a judicial determination of liability pursuant

16  to rules of interpretation applied to insurance contracts.

17    **1. A Release of Liability Extinguishes All Rights and Therefore Bars**

18      **"Liability" Required by Section II**

19    Interpretation of an insurance policy is a question of law. *See Clarendon Nat'l Ins. Co. v.*

20  *Ins. Co. of the West*, 442 F. Supp. 2d 914, 922 (E.D. Cal. 2006).[7]  Courts must first look at the

21  language of the policy itself to ascertain its plain meaning: the "meaning a layperson would

22  ordinarily attach to it." *Garamendi v. Mission Ins. Co.*, 131 Cal.App.4th 30, 42 (2005).

23  Accordingly, words are to be read in the "ordinary and popular sense," and in context of the

24  policy as a whole. *Id.*

25    Accordingly, both the California Supreme Court and Ninth Circuit have held the term

26  "liability" as "amenability or responsibility to *law*; the condition of one who is subject to a

27  _____

28  [7] Federal courts apply state law in contract interpretation. *See, e.g. Airborne Freight Corp. v. McPherson*, 427 F.2d 1283, 1285 (9th Cir. 1970). Accordingly, Plaintiffs cite to California court cases where relevant.

1   charge or duty which may be *judicially enforced.*" *E.g.*, *Wood v. Currey*, 57 Cal. 208, 209

2   (1881) (emphasis added) (applying dictionary definition of "liability" to interpret statute

3   governing oral contracts); *Kirsch v. Barnes*, 263 F.2d 692, 695 (9th Cir. 1959).

4          The language of Section II expressly conditions State Farm's right of reimbursement on

5   the insured recovering money from any person "liable for bodily injury." It is notable that in

6   drafting this language, State Farm voluntarily declined to use any qualifying language  such as

7   "might be liable," "regardless of fault," "without regard to fault," or "possibly liable." Instead,

8   State Farm used "liable" in its most absolute sense. Therefore, this specific contractual

9   condition chosen by State Farm must exist in order for the right of reimbursement to apply. If it

10  does not exist, the right of reimbursement will not apply.

11          Consistent with the above authorities, the only manner in which a party may be

12  determined "liable" is by a civil court verdict or judgment. In the absence of such determination,

13  a party cannot be found "liable." To conclude otherwise would subvert our system of civil

14  justice which requires a plaintiff to sustain a legal burden of proof to establish that a defendant

15  is "liable."

16          In the instant case, the release that Plaintiff signed expressly waives "any and all rights,

17  claims, demands, and damages of any kind" against Saremi. Ex. 6. The Ninth Circuit has held

18  that a release constitutes an "abandonment, relinquishment or giving up of a right or claim to the

19  person against whom it might have been demanded or enforced . . . **and its effect is to**

20  **extinguish the cause of action.**" *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (emphasis

21  added). Therefore, the instant release serves to "extinguish the cause of action," and destroys

22  the underlying legal rights necessary for determination that Saremi was a "liable party" as

23  required under Section II.

24      **2.      The Rule of Contract Interpretation Requires The Reimbursement Clause**

25              **In Section II To Be Interpreted To Protect The Insured's Reasonable**

26              **Expectation If The Term "Liable" Is Ambiguous.**

27          State Farm's insurance policy contains a definitions section titled "Defined Words

28  Which Are Used In Several Parts Of The Policy." Ex. 1., p. 2-3.  Given that the purpose of this

14

PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS (CV 08 0185 PJH)

1    insurance policy is to provide liability coverage, one would reasonably anticipate the term

2    "liable" to be clearly defined throughout the policy.  However, "liable" is not defined anywhere

3    in the policy.

4        In the absence of any stated definition for "liable," State Farm takes the incorrect

5    position that a settlement and release of all legal rights equals "liable."  It is notable that State

6    Farm fails to cite a single case supporting this position.

7        An insurance policy provision is ambiguous when it is "capable of two or more

8    constructions both of which are reasonable."  *See Garamendi v. Mission Ins. Co.*, 131

9    Cal.App.4th at 42.  Here "liable" becomes ambiguous when it includes recoveries obtained by

10   the insureds by means of settlements with executed releases.  The *Garamendi* court held that the

11   ambiguity must "be interpreted to protect the objectively reasonable expectations of the

12   insured." *Id.*  Accordingly, here the Court "must attempt to resolve the ambiguity by adopting

13   the meaning that reflects the objectively reasonable expectations of the insured." *Flintkote Co. v.*

14   *Gen. Accident Assur. Co. of Can.*, 410 F.Supp.2d 875, 881 (N.D. Cal. 2006)

15       Therefore, the ambiguous term "liable" must be interpreted to protect Plaintiff – the

16   insured. *See Holcomb v. Hartford Casualty Ins. Co.*, 230 Cal. App. 3d 1000, 1007 (1991).  The

17   *Holcomb* court held that defendant insurer carrier was not entitled to deduct medical payments it

18   paid to plaintiff from underinsured motorist benefits because the medical payment provision

19   was ambiguous. The court held that "[t]he meaning of an insurance policy is to be ascertained

20   according to the insured's reasonable expectation of coverage, and all doubts as to the meaning

21   are to be resolved against the insurer." *Id.* at 1007-08 (internal citation omitted). Therefore, the

22   court adopted the plaintiff's interpretation because it was the one which provided the greatest

23   coverage.

24       Thus, based upon the way in which State Farm drafted its form insurance agreement,

25   there must be a judicial determination of liability before it has the right to seek reimbursement

26   of payments made by third parties to its insured in settlement agreements.

27

28

15

1

**VI.    CONCLUSION**

2          Based upon the foregoing, Plaintiff respectfully submits that this Court deny State

3  Farm's Motion for Judgment on the Pleadings, or in the alternative grant Plaintiff leave to

4  amend as requested herein.

5  Dated: July 23, 2008                          KABATECK BROWN KELLNER LLP

6

7

8                                               NIALL G. YAMANE
9                                               Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS (CV 08 0185 PJH)