SEDGWICK, DETERT, MORAN & ARNOLD LLP
KEVIN J. DUNNE  Bar No. 40030
LAURA L. GOODMAN  Bar No. 142689
ANDREW J. KING  Bar No. 253962
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BUONOCORE, an individual on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and DOES 1 through 10 inclusive,<br><br>             Defendants. | CASE NO. CV 08 0184 PJH<br><br>**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS [FED.R.CIV.P. 12(C)]**<br><br>JUDGE:  The Honorable Phyllis Hamilton<br>CTRM:   3<br>DATE:   August 13, 2008<br>TIME:   9:00 a.m. |

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 4

    A. The Court Can And Should Consider The Settlement Agreement And Admissions In Ruling On State Farm's Motion ...................................................... 4

    B. Buonocore's Submission Of An Underinsured Motorist Claim To State Farm Necessarily Requires Him To Contend In Good Faith And Prove That Saremi Was Liable For His Injury ........................................................ 7

    C. Buonocore's Distinction Between "Offset" And "Reimbursement" Is An Artificial One As It Is Undisputed That State Farm Is Entitled To Reduce His Underinsured Motorist Award, If Any, By The Amount Of Medical Payments Advanced By State Farm............................................................ 8

    D. Buonocore Has Not Sought, And Should Not Be Given, Leave To Amend...................................................................................................................... 9

III. CONCLUSION.................................................................................................................. 11

**TABLE OF AUTHORITIES**

**PAGE**

**FEDERAL CASES**

*Brockelsby v. United States*,
  767 F.2d 1288 (9th Cir. 1985) ..............................................................................4, 5

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) .....................................................................................5

*Hudspeth v. Commissioner of Internal Revenue Service*,
  914 F.2d 1207 (9th Cir. 1990) ...................................................................................1

*Hughes Aircraft Company v. National Semiconductor Corp.*,
  857 F. Supp. 691 (N.D. Cal. 1994) ...........................................................................4

*L.H. v. Arnold Schwarzenegger*,
  2008 U.S. Dist. LEXIS 9362 (E.D. Cal. Jan. 29, 2008)..............................................5

*Lans v. Digital Equipment Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) .................................................................................5

*Mendenhall v. Nat'l Safety Transportation Board*,
  92 F.3d 871 (9th Cir. 1996) .......................................................................................2

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ...................................................................................4

*Reisner v. General Motors Corp.*,
  511 F. Supp. 1167 (S.D.N.Y. 1981)..........................................................................5

*Rhoades v. Avon Products, Inc.*,
  504 F.3d 1151 (9th Cir. 2007) ...................................................................................4

*Schlacter-Jones v. General Telephone*,
  936 F.2d 435 (9th Cir. 1991) .....................................................................................4

*United States v. Pend Oreille Pub. Utility Dist. No. 1*,
  926 F.2d 1502 (9th Cir. 1991) ...................................................................................5

*United States v. Technic Services, Inc.*,
  314 F.3d 1031 (9th Cir. 2002) ..............................................................................4, 5

*W.E. Green v. Leroy*,
  226 F.R.D. 624 (C.D. Cal. 2005) ..............................................................................1

*Wimm v. Jack Eckerd Corp.*,
  3 F.3d 137 (5th Cir. 1993) .........................................................................................5

**FEDERAL STATUTES**

Fed.R.Civ.P. 15(a) ..............................................................................................................4

**Table of Authorities**
**(Continued)**

**PAGE**

Fed.R.Evid. 408(a)................................................................................................................4

Fed.R.Evid. 408(b)................................................................................................................4

**STATE STATUTES**

Cal. Ins. Code § 11580.2(e) ..................................................................................................3

ii                                        CASE NO. CV 08 0184 PJH

STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

I.    INTRODUCTION

Buonocore essentially seeks to perpetrate a fraud on the Court and State Farm. He claims a right to recover a double payment from State Farm based on his argument that there is an admission of liability from the third party motorist for purpose of his underinsured motorist claim, but that there is no admission of liability from the third party motorist with respect to State Farm's advancement of medical expenses.

All of the claims contained in Buonocore's complaint against State Farm are premised on a false statement of material fact: that the payments he received from the third party motorist, Saremi, were not made by a "party liable for the bodily injury." To prevail on its motion, State Farm does not need to prove that Saremi was legally liable for Buonocore's injuries. Instead, State Farm has shown, from the pleadings, that Buonocore obtained a settlement agreement and admissions of liability from Saremi which completely undermine his claims in this litigation. The documents incorporated in Buonocore's complaint show that the following material allegations contained in Buonocore's complaint are false:

- "The *settlement agreement contained a . . . "denial of liability*" as to the third party motorist." (Cpt., Docket No. 1, ¶ 16, lines 16-18, emphasis added.)

- "In fact, the *third party has expressly denied liability* as it does in all settlements." (*Id.* at ¶ 22, lines 13-14, emphasis added.)

- "State Farm has breached its contractual obligation by improperly obtaining reimbursement of medical expenses it has advanced and/or withheld payment of its medical bills . . . .when its insureds receive payments from third parties by way of compromise or settlement *and no* determination or *acknowledgment of 'liability for the bodily injury' has been made.*" (*Id.* at ¶ 29, emphasis added.)

- "Specifically, Plaintiff and the Class contend that 'Section II – Medical Payments – Coverage C', does not provide State Farm with the right to reimbursement where the insured has *entered into a settlement agreement with a third party and/or for an uninsured motorist claim where . . . the settlement agreement contains an express provision denying liability.*" (*Id.* at ¶ 43, emphasis added.)

- "State Farm has tortuously [sic] breached its implied covenant of good faith and fair dealing, by improperly obtaining reimbursement of medical expenses it has advanced and/or withholding payment of medical bills . . . from its insureds when *the insureds receive payments from third parties by way of compromise or settlement and no* determination or *acknowledgment of 'liability for the bodily injury' has been made.*" (*Id.* at

¶ 53, emphasis added.)

- State Farm acted with malice, oppression or fraud by improperly obtaining reimbursement of medical expenses it has advanced and/or withholding payment of medical bills . . . from its insureds *when the insureds receive payments from third parties by way of compromise or settlement and no* determination or *acknowledgment of 'liability for the bodily injury' has been made*." (*Id*. at ¶ 56, emphasis added.)

Yet Buonocore tells the Court that it cannot consider the fact that his pleading is false and frivolous because the settlement agreement and requests for admission, incorporated by reference in his complaint, are inadmissible under Federal Rule of Evidence 408. Not only has the Ninth Circuit held that such evidence would be admissible in connection with a motion under Rule 11 of the Federal Rules of Civil Procedure,[1] but Rule 408 and the case law interpreting it are clear that the evidence is admissible when used for a purpose other than to prove that Saremi was in fact liable for Buoncore's bodily injuries. State Farm does not seek to prove that Saremi was in fact liable for Buonocore's injuries; what State Farm presents to the Court is that *Buonocore obtained an admission of liability from Saremi* for the purpose of pursuing his underinsured motorist claim, and cannot now assert otherwise.[2] In other words, State Farm relies on the settlement agreement and admissions incorporated in Buonocore's complaint for the purpose of showing material misrepresentations in the complaint that destroy Buonocore's claims against State Farm as a matter of law.

Buonocore misses the same point when he argues that his filing of an underinsured motorist claim with State Farm does not constitute an "admission of liability." Again, the issue is not that State Farm seeks to prove Saremi liable for Buonocore's injuries. Rather, it is that

---

[1]   A motion which State Farm is considering filing. *See Mendenhall v. Nat'l Safety Transportation Board*, 92 F.3d 871, 876 (9th Cir. 1996) (pilot awarded attorneys' fees where the Federal Aviation Administration obtained compromise from pilot and then continued to knowingly prosecute baseless action against pilot).

[2]   Even more troubling is Buonocore's argument – relying on the settlement agreement with Saremi – that Buonocore waived all his rights and claims against Saremi, extinguishing and "destroy[ing] the underlying legal rights necessary for determination that Saremi was a 'liable' party' as required under Section II [of the State Farm policy]." (Docket 23, pp. 13-14.)

2   CASE NO. CV 08 0184 PJH

STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*Buonocore is claiming that Saremi is liable*, thereby entitling Buonocore to underinsured motorist benefits under the State Farm policy. Buonocore cannot insist that Saremi is liable for the purpose of his underinsured motorist claim, but conveniently deny this contention where he wants to maintain a federal court class action and recover his attorneys' fees. (Docket No. 1, ¶ 55.)

Buonocore's arguments about the distinction between reimbursement and offset are not relevant to State Farm's motion. The point made by State Farm is that since Buonocore alleges that he has made an underinsured motorist claim under his State Farm policy, State Farm is entitled under the policy and Insurance Code § 11580.2(e), to reduce any payment to Buonocore by the amount paid under the medical payments coverage advanced by State Farm. Buonocore cannot escape the fact that he has made an underinsured motorist claim. Thus, his argument regarding the right of reimbursement in the absence of an underinsured motorist claim is irrelevant.

Finally, while Buonocore makes broad, unsupported references to a motion for leave to amend, no such motion has yet been filed and Buonocore's counsel recently advised counsel for State Farm that he had not yet been retained by a substitute plaintiff. Of course, given the facts of this case, it is clear that any lawsuit filed by an insured who has not submitted an underinsured motorist claim and who has not obtained an admission of liability from the third party motorist, is a different lawsuit than the one filed by Buonocore. As this case makes apparent, the factual intricacies and individual issues relevant to each claim do not render the issues presented by Buonocore appropriate for a substitute plaintiff, let alone class action treatment. Buonocore cannot amend his complaint to substitute in a new plaintiff, because the very nature of such a complaint would constitute a completely new and different lawsuit. Accordingly, State Farm therefore requests that the Court grant its motion for judgment on the pleadings without leave to amend.

## II.   ARGUMENT

A. <u>The Court Can And Should Consider The Settlement Agreement And Admissions In Ruling On State Farm's Motion</u>

The settlement agreement and admissions incorporated in Buonocore's complaint (and which Buonocore concedes are authentic) should be considered on this motion where they are not being offered to prove the liability of Saremi, but to show that Buonocore has obtained an admission from Saremi that undermines Buonocore's claims in this lawsuit. Federal Rule of Evidence 408 excludes evidence of settlement negotiations only "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed.R.Evid. 408(a). *It does not preclude the use of such evidence for other purposes* as expressly recognized in Rule 408(b) which provides:

> This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witnesses bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation.

Fed.R.Evid. 408(b). The Ninth Circuit has consistently held that the "other purposes" for which evidence of a settlement or settlement negotiations are allowed are not limited to the examples provided in Rule 408(b). *See United States v. Technic Services, Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (other purposes identified in Rule 408 is not an exhaustive listing, but only illustrative); *Rhoades v. Avon Products, Inc.* 504 F.3d 1151, 1160-63 (9th Cir. 2007) (same). *See also, Brockelsby v. United States*, 767 F.2d 1288, 1292-93 (9th Cir. 1985).

Recently, in *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151 (9th Cir. 2007), the Ninth Circuit addressed the issue of whether to exclude evidence of repetitive threats of litigation over four years of settlement negotiations. It held that such evidence was admissible to establish that a lawsuit presented a "genuine controversy" because the plaintiff had "a real and reasonable apprehension" that it would be subject to liability if it continued to manufacture its product. DermaNew, a cosmetics and skin care company that patented and distributes related skin care products, filed a lawsuit in the federal court. DermaNew attempted to register its products with Avon Products, Inc., which challenged before the Trademark Trial and Appeal Board ("TTAB").

At the time DermaNew commenced its federal court action, seven trademark proceedings were pending before the TTAB and numerous other opposition proceedings had been filed by Avon worldwide. In 2001, soon after Avon filed its first TTAB opposition proceeding, the parties began settlement negotiations.

DermaNew filed a complaint in the Central District of California, seeking a declaratory judgment that its trademark applications do not infringe on Avon's. In its first amended complaint, DermaNew alleged that the settlement negotiations lasted more than four years and that repeated threats were made by Avon that if DermaNew did not "get rid" of its product Avon would sue it for trademark infringement and damages. Avon filed a motion to dismiss, asserting that the district court lacked subject matter jurisdiction because the alleged threats of infringement litigation were excludable under Federal Rule of Evidence 408. The district court granted the motion to dismiss and DermaNew appealed

The Ninth Circuit reversed. In doing so, it rejected Avon's argument that the threats recounted in the first amended complaint and attached letters were privileged because they occurred during settlement negotiations and could not be considered by the court. The court discussed Rule 408, stating:

> The text of the rule is clear: evidence from settlement negotiations may not be considered in court "*when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction.*" Rule 408, however, does not bar such evidence when "offered for [other] purposes... [such as] proving a witness's bias or prejudice." See, e.g., *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (holding that evidence from settlement negotiations was admissible to prove "obstruction of the EPA's investigation"); *United States v. Pend Oreille Pub. Utility Dist. No. 1,* 926 F.2d 1502, 1507 n. 4 (9th Cir. 1991) (same, where the evidence was "introduced only to prove that disputed lands were suitable for agricultural use prior to construction of [a] dam"). Notwithstanding the letter's attempt to claim an absolute privilege, therefore, statements made in settlement negotiations are only excludable under the circumstances protected by the Rule.

*Id*. at 1161-62 (emphasis in original). The court also rejected Avon's "policy" argument that recognition of statements made during settlement will ruin the "freedom of communication with respect to compromise" that the Rule protects, stating:

> [T]he rule [408], by its own terms, is one of limited applicability. In other words, Rule 408 is designed to ensure that parties may make offers during settlement

5                    CASE NO. CV 08 0184 PJH

STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

> negotiations without fear that those same offers will be used to establish liability should settlement efforts fail. When statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured.

*Id.* at 1161-62.

In *Brockelsby, v. United States*, 767 F.2d 1288 (9th Cir. 1985), a wrongful death and property damage case resulting from an airplane crash, the Ninth Circuit affirmed the district court's admission of a settlement and indemnity agreement entered into between defendants Jeppsen (a company that created graphics to show the FAA's standard instrument approach procedures) and the Government. Jeppsen objected to the evidence under Rule 408, claiming that the only purpose of the evidence was to establish liability. The Ninth Circuit found that the agreement was admissible for two other purposes: (1) to show that Jeppsen and the Government were in fact not adverse, and (2) to attack the credibility of witnesses for the Jeppsen and the Government. *Id.* at 1292-93. The Ninth Circuit stated: "If the existence of the indemnity agreement made defendants' witnesses' testimony less credible, it was admissible." *Id.* at 1293, fn. 3.

In *Hudspeth v. Commissioner of Internal Revenue Service*, 914 F.2d 1207 (9th Cir. 1990), a case heavily relied upon by Buonocore, the Ninth Circuit expressly held that while evidence of a valuation contained in a taxpayer's settlement agreement with the tax commissioner settling deficiency proceedings was inadmissible to prove the taxpayer's valuation, it was admissible to show bias or prejudice on the part of the tax commissioner. Similarly, in *W.E. Green v. Leroy*, 226 F.R.D. 624 (C.D. Cal. 2005), another case relied upon by Buonocore, the court allowed evidence of the number of settlements of over-detention claims made against a sheriff, not to prove liability against the sheriff for alleged violation of the plaintiff's civil rights, but to show that the sheriff was on notice that there were other claims of over-detention, including a number of settlements of over-detention claims. *Id.* at 642.

Here, State Farm does not seek to admit the settlement agreement and admissions incorporated in Buonocore's complaint for the purpose of proving that Saremi was liable for Buonocore's injuries – the purpose prohibited by Rule 408. Instead, State Farm offers the

evidence to prove that Buonocore has made material misrepresentations in his complaint and that his repeated allegations *that there has been no acknowledgment of liability* – the underpinnings of Buonocore's claims – are known by Buonocore to be patently false. The settlement agreement and admissions are admissible to show Buonocore's knowledge that Saremi admitted liability, that his allegations to the contrary were known to be false at the time they were made, and that his claims are wholly without merit.

Under Buonocore's theory, he has the unilateral ability to use Rule 408 as both a sword and shield for the purpose of holding State Farm hostage to a frivolous complaint and committing insurance fraud. His position is that he can obtain a double recovery of medical payments advanced by State Farm. All he needs to do is obtain an admission of liability from a third party motorist in connection with a settlement agreement and then State Farm cannot use that evidence to deny his spurious allegations that the third party motorist expressly denied liability. It would be contrary to all public policy to allow Buonocore to misrepresent material facts to the Court and State Farm by hiding behind Rule 408, thereby depriving State Farm of the right to defend itself against the fraud. The Court should hold that Buonocore's knowledge of the settlement agreement and admissions in which Saremi admits liability preclude his claims in this lawsuit.

B. <u>Buonocore's Submission Of An Underinsured Motorist Claim To State Farm Necessarily Requires Him To Contend In Good Faith And Prove That Saremi Was Liable For His Injury</u>

Buonocore argues that his submission of an underinsured motorist claim to State Farm is irrelevant to the issue of Saremi's liability for his injuries and thus his claims regarding reimbursement or refusal to make duplicate payment. Instead, he claims that there has been no "judicial determination" that Saremi is liable.[3] Nonetheless, Buonocore admits "the uncontested notion that prevailing on an underinsurance claim requires proof that a third party motorist is liable." (Docket No. 23, at 9:9-11.) The point State Farm makes is that in order to assert an

---

[3] In fact, Buonocore contends that by entering into the settlement agreement with Saremi he has released Saremi and there is no possibility that Saremi can ever be found liable. (Docket 23, pp. 13-14.)

STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1  underinsured motorist claim to State Farm, Buonocore is required to contend (in good faith) and
2  prove that Saremi is liable Buonocore's bodily injuries. It is undisputed that the reason
3  Buonocore obtained the settlement with Saremi and the admissions of liability was to prove to
4  State Farm that Saremi was liable so that Buonocore could recover more than his medical
5  payments under the underinsured motorist provisions of the policy. Thus, by submitting his
6  underinsured motorist claim, Buonocore has necessarily conceded that Saremi is liable for
7  Buonocore's injuries. Buonocore cannot take inconsistent positions; arguing that Saremi is
8  liable for the purpose of Buonocore obtaining underinsured motorist benefits, but denying that he
9  is liable for purposes of this lawsuit.

C.  **Buonocore's Distinction Between "Offset" And "Reimbursement" Is An Artificial One As It Is Undisputed That State Farm Is Entitled To Reduce His Underinsured Motorist Award, If Any, By The Amount Of Medical Payments Advanced By State Farm**

Buonocore cannot rebut a fundamental deficiency in his complaint. Each of his claims fails to state a claim for relief as a matter of law to the extent they challenge State Farm's right to offset (or "withhold") amounts previously advanced to Buonocore for medical payments under Coverage C from any underinsured motorist arbitration award pursuant to Coverage U. Buonocore does not, and cannot, allege that he has reimbursed State Farm for the medical payments it has advanced under Coverage C pursuant to the "reimbursement" provisions of the policy.[4] Indeed, he does not even properly allege that he is a member of his own purported "class."[5] The only claim that Buonocore has is that State Farm may reduce the amount of his underinsured motorist award, if any, by the amounts advanced by State Farm as medical payments under Coverage C. This is clearly and expressly allowed under the policy and Insurance Code. Cal. Ins. Code § 11580.2(e); Docket No. 1, Ex. A, p. 13.[6] Because Buonocore

---

[4]  While not essential to State Farm's motion, which is based on the complaint and documents incorporated therein, State Farm notes that it does not request reimbursement of the $25,000 it has advanced to Buonocore for medical payments under Coverage C, and Buonocore does not and cannot truthfully allege that it does.

[5]  Buonocore's alleged class consists only of State Farm insureds who have "thereafter reimbursed State Farm for proceeds advanced pursuant to the medical payment coverage provision." (Docket No. 1, ¶ 4.)

[6]  Under "Limits of Liability Under Coverage U," the policy provides that: "4. The

1  has no claim against State Farm for improper reimbursement, but only has a potential setoff on

2  any future underinsured motorist coverage recovery, Buonocore's "reimbursement" claims fail

3  as a matter of law.[7]

D. <u>Buonocore Has Not Sought, And Should Not Be Given, Leave To Amend</u>

Buonocore argues, without submission of a proposed amended complaint, and presumably with no "substitute plaintiff," that he should be given leave to amend. State Farm opposes any request by Buonocore to amend his complaint. Obviously, any amendment that substitutes a plaintiff who has not submitted an underinsured motorist claim and who has not obtained an admission of liability from the third party motorist, creates an entirely new lawsuit that should be separately filed. Further, Buonocore has known about the misrepresentations and defects in his complaint since before he filed this lawsuit and yet he has insisted on proceeding with these claims.

Where, as here, State Farm has filed a responsive pleading and a dispositive motion, Buonocore may only amend his complaint with leave of court. Fed.R.Civ.P. 15(a). Although leave to amend is "to be freely given," the decision whether to grant leave is entirely within the sound discretion of the Court and will be reversed only for an abuse of discretion. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Hughes Aircraft*

---

uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage." (Docket No. 1, Ex. A at p.13.) Section 11580.2(e) provides that:

> The policy or endorsement added thereto may provide that if the insured has valid and collectible automobile medical payment insurance available to him or her, the damages that the insured shall be entitled to recover from the owner or operator of an uninsured motor vehicle *shall be reduced for purposes of uninsured motorist coverage by the amounts paid or due to be paid under the automobile medical payment insurance.*

[7] Buonocore devotes an entire section of his opposition to whether California Insurance Code Section 11580.2(p)(5) applies to the question of offsets for medical payments. His efforts are not well taken since State Farm simply cited Section 11580.2(p)(5) as another example of the California legislature approving the use of offsets in the context of automobile insurance policies. Section 11580.2(e) is the governing provision with regard to offset for medical payments at issue here, and operates with the Policy language to preclude Buonocore's claims to the extent they complain of "withholding" prior medical payments from any underinsured motorist recovery.

1  *Company v. National Semiconductor Corp.*, 857 F.Supp. 691, 701 (N.D. Cal. 1994).  In deciding
2  whether to grant leave, it is proper for the district court to consider: (1) whether amendment will
3  prejudice the amending party's adversary; (2) whether the amending party has delayed
4  unnecessarily in seeking leave; (3) whether the allegations to be added would be futile or
5  frivolous; (4) whether the addition of the new claims would "greatly change the nature of the
6  litigation;" and (5) whether the party seeking leave has acted in bad faith.  *Schlacter-Jones v.*
7  *General Telephone*, 936 F.2d 435, 443 (9th Cir. 1991). *See DCD Programs, Ltd. v. Leighton*,
8  833 F.2d 183, 186 (9th Cir. 1987).

9  Buonocore's bad faith maintenance of a lawsuit known to be without merit and, the fact
10 that any claims brought by a substitute plaintiff will create a new and different lawsuit, strongly
11 warrant against granting Buonocore leave to amend.  *See Wimm v. Jack Eckerd Corp.*, 3 F.3d
12 137, 141 (5th Cir. 1993) (party's assertion of improper and/or spurious claims may constitute
13 bad faith justifying denial of leave to amend); *Reisner v. General Motors Corp.*, 511 F.Supp.
14 1167, 1172 (S.D.N.Y. 1981) (proposing amendment to forestall a ruling on a dispositive motion
15 justifies denial of leave to amend).  *See also*, *Lans v. Digital Equipment Corp.*, 252 F.3d 1320,
16 1328-29 (Fed. Cir. 2001) (plaintiff properly denied leave to amend where he purported to own a
17 patent he did not own, did not disclose the actual owner of the patent and filed a complaint with
18 allegations that were not "'honest and understandable' mistakes.")

19 Buonocore relies on  *L.H. v. Arnold Schwarzenegger* 2008 U.S. Dist. LEXIS 9362 (E.D.
20 Cal. Jan. 29, 2008) as support for his claim that amendment to substitute a new "class
21 representative" is appropriate.  This case is very different from *L.H.* where (1) a class had
22 already been certified, (2) the class representatives, who were juvenile parolees, had standing at
23 the time the class was certified, and (3) the sole purpose of the substitution  was that the juvenile
24 parolee plaintiffs would soon age out of the juvenile parole system, thus mooting the case if
25 there were no substitution.  Unlike *L.H.*, where the class had already been certified, this case
26 currently involves the claims of a single individual claim – Mr. Buonocore.  If Mr. Buonocore
27 has no standing to maintain his claims, he does not have standing to substitute in a new plaintiff.
28

III. <u>CONCLUSION</u>

Buonocore has failed to allege a cognizable legal theory to support any of his claims for relief. This Court must reject Buonocore's fraudulent attempt to deny that Saremi has admitted liability for purposes of Coverage C reimbursement, while at the same time submitting the *same admissions* to State Farm to prove that Saremi *was* liable for purposes of Buonocore's underinsured motorist claim. For the foregoing reasons, this Court should grant State Farm's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and dismiss Buonocore's complaint in its entirety with prejudice.

DATED: July 30, 2008	SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: <u>s/Laura L. Goodman</u>
　　Kevin J. Dunne
　　Laura L. Goodman
　　Andrew J. King
　　Attorneys for Defendant
　　STATE FARM MUTUAL AUTOMOBILE
　　INSURANCE COMPANY